UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, JUDGE

| | |
|---|---|
| TARGET CORPORATION, | : |
| | : |
| | : |
| Plaintiff, | :    Court No. 21-00162 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

## **ORDER**

Upon consideration of defendant's motion to dismiss for failure to state a claim upon which relief may be granted, other papers on file, and upon due deliberation, it is hereby

**ORDERED** that defendant's motion be and is hereby is granted; and it is further

**ORDERED** that this action is dismissed with prejudice.

<br>

_____
JUDGE

Dated: _____
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, JUDGE

| | |
|---|---|
| TARGET CORPORATION, | : |
| | : |
| | : |
| Plaintiff, | :    Court No. 21-00162 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of International Trade, defendant respectfully requests that this Court dismiss this action with prejudice for failure to state a claim upon which relief may be granted.  The reasons for our motion are set forth in the accompanying memorandum.

WHEREFORE, defendant respectfully requests that an order be entered granting defendant's motion to dismiss and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

Of Counsel:                          /s/ Alexander Vanderweide
Edward N. Maurer                     ALEXANDER VANDERWEIDE
Deputy Assistant Chief Counsel       Senior Trial Attorney
International Trade Litigation        Department of Justice, Civil Division
U.S. Customs & Border Protection     Commercial Litigation Branch
                                     26 Federal Plaza, Room 346
                                     New York, New York 10278
                                     Tel. (212) 264-9230 or 0482
                                     Attorneys for Defendant

June 22, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, JUDGE

| | |
|---|---|
| TARGET CORPORATION, | : |
| | : |
| | : |
| Plaintiff, | :    Court No. 21-00162 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

Of Counsel:                                    ALEXANDER VANDERWEIDE
Edward N. Maurer                          Senior Trial Attorney
Deputy Assistant Chief Counsel     Department of Justice, Civil Division
International Trade Litigation          Commercial Litigation Branch
U.S. Customs & Border Protection   26 Federal Plaza, Room 346
                                                       New York, New York 10278
                                                       Tel. (212) 264-9230 or 0482
                                                       Attorneys for Defendant

June 22, 2021

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................... 1

ARGUMENT ........................................................................................................... 6

    I.    Standard of Review ...................................................................................... 6

    II.   Sections 1501 and 1514(a) Do Not Define or Limit The
          Court's Equitable Powers ............................................................................ 7

    III.   The Court's Decision in *Home Products* Is Consistent With *Cemex* ............ 13

    IV.   The Doctrine of *Res Judicata* Supports the Dismissal
           of Target's Complaint .............................................................................. 18

Conclusion ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

Agro Dutch Indus. Ltd. v. United States,
589 F.3d 1187 (Fed. Cir. 2009) ....................................................... 8, 11, 12, 17

AK Steel Corporation v. United States,
281 F. Supp. 2d 1318 (Ct. Int'l Trade 2003) ............................................... 17

Am. Signature, Inc. v. United States,
598 F.3d 816 (Fed. Cir. 2010) ................................................................. 8, 11

Ammex Inc. v. United States,
334 F.3d 1052 (Fed. Cir. 2003) ............................................................ 18, 19

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ................................................................................... 7

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ................................................................................ 6,

Borlem S.A.-Empreedimentos Industriais v. United States,
913 F.2d 933 (Fed. Cir. 1990) ...................................................................... 9

Browning v. Clinton,
292 F.3d 235 (D.C. Cir. 2002) ..................................................................... 6

Cemex, S.A. v. United States,
279 F. Supp. 2d 1357 (Ct. Int'l Trade 2003) ............................................... 16

Cemex, S.A. v. United States,
384 F.3d 1314 (Fed. Cir. 2004)...................................................................................*passim*

Federated Dep't Stores, Inc. v. Moitie,
452 U.S. 394 (1981)........................................................................................................ 18

Heartland By-Prod., Inc. v. United States,
424 F.3d 1244 (Fed. Cir. 2005)........................................................................................ 9

Home Prods. Int'l, Inc. v. United States,
405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019) ...................................................*passim*

Home Prods. Int'l, Inc. v. United States,
846 Fed. Appx. 890 (Fed. Cir. 2021).......................................................................... 4, 7

Kellogg Brown & Root Servs., Inc. v. United States,
728 F.3d 1348 (Fed. Cir. 2013)........................................................................................ 9

Kent v. Principi,
389 F.3d 1380 (Fed. Cir. 2004)........................................................................................ 9

LG Electronics U.S.A., Inc. v. United States,
991 F. Supp. 668 (Ct. Int'l Trade 1997) ....................................................................... 17

Marbury v. Madison,
5 U.S. 137 (1803).......................................................................................................... 17

Peacock v. Thomas,
516 U.S. 349 (1996)......................................................................................................... 9

Secured Mail Sols., LLC v. Universal Wilde, Inc.,
873 F.3d 905 (Fed. Cir. 2017).......................................................................................... 7

Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,
181 F. Supp. 3d 1348 (Ct. Int'l Trade 2016) ............................................................... 18

Shinyei Corp. v. United States,
355 F.3d 1297 (Fed. Cir. 2004).................................................................................. 8, 11

United Pac. Ins. Co. v. United States,
464 F.3d 1325 (Fed. Cir. 2006)........................................................................................ 6

United States v. Hanover Ins. Co.,
82 F.3d 1052 (Fed. Cir. 1996).......................................................................................... 9

United States v. Tohono O'Odham Nation,
563 U.S. 307 (2011)....................................................................................................... 18

Yanko v. United States,
869 F.3d 1328 (Fed. Cir. 2017)..................................................................................... 7

**Statutes**

19 U.S.C. § 1501 ...............................................................................................*passim*

19 U.S.C. § 1504.................................................................................................... 10

19 U.S.C. § 1504(d)........................................................................................... 13, 14

19 U.S.C. § 1514............................................................................................ 4, 6, 7, 10

19 U.S.C. § 1514(a) ...........................................................................................*passim*

19 U.S.C. § 1514(b).................................................................................................. 10

19 U.S.C. § 1516a.................................................................................................... 10

19 U.S.C. § 1516a(c)(2)............................................................................................. 17

19 U.S.C. § 1516a(e)........................................................................................... 24, 17

28 U.S.C. § 1581(c)................................................................................................... 2

28 U.S.C. § 1581(i)................................................................................................... 8

28 U.S.C. §1585...................................................................................................... 9

19 U.S.C. § 2643(c)(1).............................................................................................. 9

Continued Dumping and Subsidy Offset Act of 2000 ...................................................... 2

**Rules**

USCIT Rule 71 ................................................................................................... 19, 20

**Other Authorities**

*Floor-Standing, Metal-Top Ironing Tables and Certain Parts*
*Thereof from the People's Republic of China,*
69 Fed. Reg. 47, 868 (Dep't of Commerce Aug. 6, 2004) ............................................ 1

*Floor-Standing, Metal-Top Ironing Tables and Certain Parts*
*Thereof from the People's Republic of China,*
72 Fed. Reg. 13, 239 (Dep't of Commerce Mar. 21, 2007), as amended by
72 Fed. Reg. 19, 689 (Dep't of Commerce Apr. 19, 2007)............................................ 2

*Floor-Standing, Metal-Top Ironing Tables and Certain Parts*

*Thereof from the People's Republic of China,*
82 Fed. Reg. 1, 322 (Dep't of Commerce Jan. 5, 2017)................................................................ 3

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, JUDGE

| | |
|---|---|
| TARGET CORPORATION, | : |
| | : |
| | : |
| Plaintiff, | :    Court No. 21-00162 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of International Trade, defendant, United States, respectfully requests that the Court dismiss the complaint filed by Target Corporation (Target) for failure to state a claim upon which relief may be granted.

## BACKGROUND

In bringing this action, Target asks the Court to reconsider and reverse its decision in *Home Prods. Int'l, Inc. v. United States*, 405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019) (*Home Products*), and award Target relief foreclosed by the decision. Compl. at p. 5, ECF No. 6. Target's complaint consists of legal arguments, all of which have been considered and rejected by the Court in *Home Products*. As a consequence, Target's complaint should be dismissed for failure to state a claim upon which relief may be granted.

*Home Products* concerned a challenge to the final results issued by the Department of Commerce (Commerce) in connection with the first administrative review of the antidumping duty order regarding ironing tables from China. *Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China*, 72 Fed. Reg. 13,239 (Dep't of

Commerce Mar. 21, 2007) (final admin. review), *amended by* 72 Fed. Reg. 19,689 (Dep't of Commerce Apr. 19, 2007).

During the first review period, imports of ironing tables from Since Hardware (Guangzhou) Co., Ltd. (Since Hardware), a Chinese producer and exporter of ironing tables, were entered at an antidumping duty deposit rate of 9.47%. *Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China*, 69 Fed. Reg. 47,868 (Dep't of Commerce Aug. 6, 2004) (am. final determ.).  When the review was completed and amended in April 2007, Commerce changed the antidumping duty rate for Since Hardware to 0.45%, which Since Hardware and Home Products International, Inc., (HPI), an affected domestic producer under the Continued Dumping and Subsidy Offset Act of 2000 (CDSOA), challenged in Consolidated Court No. 07-00123 pursuant to 28 U.S.C. § 1581(c).  Prior to consolidation, the Court granted a consent motion for a preliminary injunction, prohibiting the liquidation of subject entries before a final decision on the merits.  ECF No. 11, Court No. 07-00123.

After nearly a decade of litigation, on December 8, 2016, the Court issued a final judgment consistent with a Stipulation for Entry of Judgment filed by all parties—HPI, Since Hardware, and the Government.  ECF No. 168, Court No. 07-00123.  The judgment directed Commerce to, among other things, (1) amend its final results and set the final weighted-average dumping margin for ironing tables produced or exported by Since Hardware at 72.29%, and (2) instruct CBP to liquidate the relevant entries at that rate.  *Id*.  The judgment also decreed that the preliminary injunction "shall be dissolved, and the covered entries be liquidated in accordance with this entry of judgment…"  *Id*.

In accordance with the judgment, Commerce published amended final results in the Federal Register, *see Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China*, 82 Fed. Reg. 1,322 (Dep't of Commerce Jan. 5, 2017) (am. final results), and issued liquidation instructions to CBP in Message No. 7023304 (Jan. 23, 2017). ECF No. 171-2, Court No. 07-00123.  The Federal Register Notice and the liquidation instructions both explained that the relevant entries would be assessed at 72.29%.  *Id.*

In March 2017, CBP liquidated hundreds of entries in accordance with Commerce's instructions and the Court's judgment.  *Home Products*, 405 F. Supp. 3d at 1375.  However, CBP also erroneously liquidated 224 entries—including 40 of Target's entries—at an antidumping rate of 9.47% (the cash deposit rate in effect at the time of entry), instead of at the ordered antidumping rate of 72.29%.  *Id.* at 1368, 1371.  In September 2017, HPI's counsel ascertained that certain entries were not liquidated properly, and informed counsel for the Government of the issue on October 4, 2017 (HPI's counsel had also conferred with CBP personnel regarding the error several days prior to that date).  ECF No. 182, Court No. 07-00123.

On October 20, 2017, the Government filed a status report with the Court, advising it of the liquidation error.  ECF No. 171, Court No. 07-00123.  In the report, the Government explained that the 90-day period for CBP's voluntary reliquidation of the 224 entries under 19 U.S.C. § 1501 had passed, and that CBP was prepared to reliquidate the entries expeditiously in response to an order from the Court instructing it to do so.  *Id.*

A week later, on October 27, 2017, the Court entered an order directing that the 224 entries be reliquidated in accordance with its December 8, 2016 final judgment, *see* ECF No. 172, Court No. 07-00123, which CBP then scheduled to be reliquidated on November 17, 2017. *See Home Prods. Int'l, Inc. v. United States*, 846 Fed. Appx. 890, 891 (Fed. Cir. 2021).

3

On November 9, 2017, Target—an importer of ironing tables from Since Hardware who had never appeared in the litigation before—filed several motions in an effort to prevent the Court-ordered reliquidation, including motions to intervene, to stay implementation of the Court's October 27, 2017 order, and to reconsider and vacate said order.  ECF Nos. 173, 176, 177, Court No. 07-00123.  Shortly thereafter, on November 15, 2017, the Court issued an order staying implementation of its reliquidation order of October 27, 2017 so that Target could address the issue of reliquidation.  ECF No. 181, Court No. 07-00123.

Nearly two years later, on September 27, 2019—after receiving and considering additional briefing regarding reliquidation from Target, HPI, and the Government, and ultimately denying as moot Target's motions to intervene, and to stay, reconsider, and vacate the Court's October 27, 2017 order—the Court issued an affirmative injunction enforcing its final judgment, thereby directing the Government to reliquidate the 224 entries.  *Home Products*, 405 F. Supp. 3d 1368.  In its decision, the Court rejected Target's argument that the Court was precluded from enforcing its judgment because the 90-day period for CBP to voluntarily reliquidate under 19 U.S.C. § 1501 had already passed.  *Id*. at 1371-74.  Although not discussed, let alone cited by Target in its additional briefing, the Court declined to read *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004), as prohibiting the relief it had ordered because "…(1) [the Court of International Trade] has the power to enforce its judgments, (2) the principle of finality codified § 1514 is not a bar to correcting Customs' errors in liquidating subject entries covered by trade actions, and (3) whether the court corrects the liquidations and enforces the judgment depends on a weighing of equitable factors in each case." *Home Products*, 405 F. Supp. at 1377.  In weighing the equities, the Court found that HPI and the Government had taken reasonable steps to inform the Court of the erroneous liquidations once they were discovered by HPI's counsel,

while Target had "remained silent upon receiving a fortuitous windfall when the erroneous liquidations [initially] occurred…" *Id*. at 1375-76. The Court thus exercised its Article III powers and issued the affirmative injunction, concluding that "the equities do not favor Target…" *Id*. at 1376.

In November 2019, in accordance with the Court's September 27, 2019 decision, and consistent with the Court's December 8, 2016 final judgment, CBP properly reliquidated all of the 224 subject entries, including Target's 40 entries. ECF No. 13, CAFC Court No. 20-1202. Target paid the reliquidated duty amounts, *see* Compl. ¶ 7, and on April 1, 2020 filed Protest No. 1401-20-102470 against the reliquidations. Compl. ¶ 1; Protest. Yet because Target concurrently noticed an appeal of the Court's September 27, 2019 decision on November 26, 2019, *see* ECF No. 202, Court No. 07-00123, its protest was suspended pending appeal. Compl. ¶ 26. Although the parties briefed the merits of Target's appeal, the U.S. Court of Appeals for the Federal Circuit ultimately dismissed Target's nonparty appeal on account of Target's deficient briefing. *Home Prods.*, 846 Fed. Appx. 890. Once Target's appeal had been dismissed and the mandate issued concluding the *Home Products* litigation, *see* ECF No. 91, CAFC Court No. 20-1202, CBP denied Target's protest on April 13, 2021. Compl. ¶ 27; Protest. Soon thereafter, on April 15, 2021, Target commenced this action challenging the denial of its protest. *See* Summons, ECF No. 1.

In its complaint, Target asks the Court to "reconsider its decision in *Home Products International, Inc., supra*, and reverse it." Compl. at p. 5. It also asks the Court to "order a refund of the additional antidumping duties illegally collected with interest as provided by law." *Id*. In other words, the latter relief Target seeks (refund of duties) depends on the Court granting the former relief (reversal of *Home Products*).

In essence, Target's complaint masquerades as a motion for the Court to reconsider its September 27, 2019 decision, which itself was a reconsideration, and ultimately reaffirmation, of its December 8, 2016 final judgment and October 27, 2017 order.  Indeed, Target's complaint raises only two arguments, both of which the Court has already considered and rejected when issuing its September 27, 2019 decision: (1) that 19 U.S.C. § 1501, and to a lesser extent, 19 U.S.C. § 1514, precludes the Court from enforcing its judgment; and (2) that the Court's decision runs afoul of *Cemex*.  Based upon these rejected arguments in the now-concluded *Home Products* litigation, Target has protested—and challenges in this action—the court-ordered reliquidations as a means to revisit the *Home Products* litigation.  In so doing, Target asks this Court to yet again repudiate its decision in *Home Products* and bestow upon Target—in violation of the Court's multiple orders that CBP has now fully complied with—a windfall of so-called "illegally collected" duties that Target has never been entitled to.  By seeking relief that this Court has already considered, rejected, and ordered otherwise in *Home Products*, Target's complaint presents no new factual considerations or legal arguments for the Court to revisit its already considered, and reconsidered, decision in the concluded litigation.  As a result, this action should be dismissed for failure to state a claim upon which relief may be granted.

## ARGUMENT

### I.   Standard Of Review

A motion to dismiss for failure to state a claim is appropriate when a plaintiff's allegations do not entitle it to a remedy.  *See United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327 (Fed. Cir. 2006) (citation omitted).  The motion "tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), which must be dismissed if it fails to present a legally cognizable right of action, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

6

555 (2007) (citation omitted).  Dismissal is required when a complaint fails to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "In deciding a motion to dismiss, the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant," *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013), but need not accept legal conclusions contained in the same allegations, *Twombly*, 550 U.S. at 555. Nor is this Court bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" in ruling on a Rule 12(b)(6) motion.  *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (citation omitted).

Interpretations of governing legal authorities, such as statutes, involve questions of law. *See Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004) (interpretation of a statute or regulation is a question of law) (citation omitted); *Yanko v. United States*, 869 F.3d 1328, 1331 (Fed. Cir. 2017) (treating as a "pure legal issue of statutory interpretation" claim based on interpretation of statutory provision and related executive order).  Such issues are appropriately resolved under Rule 12(b)(6).  *See*, *e.g.*, *Yanko*, 869 F.3d at 1331 (citation omitted).

## II.   <u>Sections 1501 and 1514(a) Do Not Define or Limit The Court's Equitable Powers</u>

This Court has powers in both law and equity.  It also has the authority to weigh the equities to decide whether to issue an affirmative injunction to enforce its judgment when CBP inadvertently liquidates inconsistent with the terms of a judgment.  Target alleges that the Court's equitable powers to enforce its judgments are constrained by "clear and unambiguous statutory restrictions enacted by Congress" and "statutory prohibition[s]"—here, 19 U.S.C. §§ 1501 and 1514.  Compl. ¶¶ 37, 39.

There is no merit to Target's claim that the Court's equitable powers to enforce its judgments are restricted by sections 1501 and 1514(a).  The *Home Products* Court rejected this contention, and so has the Federal Circuit.  *See, e.g., Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009) (indicating, in the context of a 28 U.S.C. § 1581(i) proceeding to amend the Court's judgment, that "when liquidation violates an injunction, not only does the trial court retain jurisdiction, but a broad array of remedies (including reliquidation) is available to the court to rectify the unlawful liquidation."); *Shinyei Corp. v. United States*, 355 F.3d 1297, 1312 (Fed. Cir. 2004) (declaring, in an action brought under 28 U.S.C. § 1581(i) to challenge Commerce's liquidation instructions, that "we decline to find that the statute [imposing finality upon liquidations] as a whole was intended to preclude judicial enforcement of court orders after liquidation.");[1] *Am. Signature, Inc. v. United States*, 598 F.3d 816, 829-30 (Fed. Cir. 2010) (stating, in an action that was permitted to proceed under 28 U.S.C. § 1581(i) to correct Commerce's liquidation instructions, that "[w]e cannot agree that Commerce is without a remedy if the ninety-day period elapses without reliquidation,…[as] the deadline is inapplicable if reliquidation is ordered by a court.").  As discussed further herein, the *Home Products* Court's equitable authority to order reliquidation to enforce and protect its judgment is independent of section 1514(a)'s finality provision and the 90-day period for CBP to voluntarily reliquidate under section 1501.

---

[1] We further analyzed the Court's authority to reliquidate entries in a recent filing involving the *In Re Section 301 Cases*, Court No. 21-00052.  *See* Court No. 21-00052, Docket Entry No. 304 at pp. 40-41 (Def. Opp. To Mot. Prelim. Inj.).  Consistent with our analysis here, in that proceeding we explained that "the Court possesses authority to order reliquidation if necessary to enforce and protect the integrity of its own judgments or orders."  *Id*. (citations omitted).  Although we believe that *Shinyei* has been misinterpreted as authority for the proposition that the Court may order reliquidation as a remedy in any case brought under 28 U.S.C. 1581(i), we agree with the decision's holding that reliquidation is appropriate if necessary to enforce the Court's judgment.

The Supreme Court and the Federal Circuit have both explained that "'[w]ithout jurisdiction to enforce a judgment…, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" *Heartland By-Prod., Inc. v. United States*, 424 F.3d 1244, 1251 (Fed. Cir. 2005) (quoting *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (citation omitted). The Court of International Trade has the constitutional authority to issue an injunction to enforce a judgment, as it "is a national court under Article III…with all the necessary remedial powers in law and equity possessed by other federal courts established under Article III…" *Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933, 937 (Fed. Cir. 1990) (internal quotations and citations omitted). And it has the statutory authority to issue an affirmative injunction as well. *See* 28 U.S.C. §§ 1585, 2643(c)(1).

As opposed to relief that a Court may be statutorily limited to issuing in the first instance in a particular action, the Court's inherent authority to enforce its judgments is necessarily broad so that the integrity of a given judgment can be protected as circumstances require. *See Peacock*, 516 U.S. at 356 ("In defining [the court's inherent power], we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances.") and at 359 ("Ancillary enforcement jurisdiction is, at its core, a creature of necessity.") (citations omitted); *see also United States v. Hanover Ins. Co*., 82 F.3d 1052, 1054 (Fed. Cir. 1996) (finding that the

Court of International Trade "has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments.").

In *Home Products*, this Court considered "whether to enforce its judgment through an affirmative injunction, which the court decides by balancing the proper assessment and collection of antidumping duties with the finality of liquidation." 405 F. Supp. 3d at 1373. In its complaint, Target does not contest the manner in which the Court weighed the equities. Rather, Target alleges that the Court's Article III equitable powers are bound by the 90-day timeframe for CBP to voluntarily reliquidate under section 1501, such that the Court did not have the authority to enforce its own judgment under the finality provision provided in section 1514(a). Compl. ¶¶ 17-18, 23, 37, 39. Yet the *Home Products* Court has already considered and rejected Target's arguments, concluding that "the principle of finality codified in § 1514 is not a bar to [the Court] correcting Customs' errors in liquidating subject entries covered by [a] trade action." 405 F. Supp. 3d at 1377; *see also id*. at 1373 ("When Customs liquidates an entry, the finality considerations of § 1514[(a)] always lurk in the background except when the Court of International Trade takes jurisdiction over the entries in an action under § 1516a.") (citing 19 U.S.C. § 1514(b), emphasis omitted).

In discussing sections 1501 and 1514 to support its position, Target's complaint ignores the purpose of those provisions. Section 1501, entitled "Voluntary reliquidations by U.S. Customs and Border Protection," authorizes *CBP* to *voluntarily* reliquidate entries "within ninety days from the date of the original liquidation." 19 U.S.C. § 1501.[2] The provision says nothing

---

[2] 19 U.S.C. § 1501 states, in relevant part, as follows:

> A liquidation made in accordance with section 1500 or 1504 of this title or any reliquidation thereof made in accordance with this section may be reliquidated in any respect by U.S. Customs and

about the Court's authority to enforce its own judgment by *ordering* CBP to reliquidate when CBP inadvertently fails to comply with the Court's judgment in an initial liquidation, as occurred in *Home Products*.

Target's references to section 1514(a) are similarly unsupported. That provision provides, as relevant here, that if an importer is affected by "decisions of the Customs Service…as to…the liquidation or reliquidation of an entry," the liquidation or reliquidation will become "final and conclusive upon all persons" unless the importer files a protest with CBP "in accordance with this section." 19 U.S.C. § 1514(a).[3] In other words, section 1514(a) recognizes that liquidation will not become final when an importer files a timely protest with CBP (and then a case at the Court, in the event the protest is denied). *Id*. While the purpose and context of section 1514(a) are specific—it is entitled "Protest against decisions of Customs Service"— Target nevertheless intimates that the provision limits the Court's inherent power to enforce its own judgments. Target's position must be rejected. Indeed, it already has been. *See*, *e.g.*, *Shinyei*, 355 F.3d at 1312; *see also Agro Dutch,* 589 F.3d at 1191-92 (citing *Shinyei* for same proposition); *Am. Signature*, 598 F.3d at 829-30.

---

Border Protection, notwithstanding the filing of a protest, within ninety days from the date of the original liquidation…

[3] 19 U.S.C. § 1514(a) states, in relevant part, as follows:

[A]ny clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service…as to…the liquidation or reliquidation of an entry…shall be final and conclusive upon all persons…unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest…is commenced in the United States Court of International Trade…

The Court may order reliquidation to effect the intent of the parties and the Court—as reflected in a court order or judgment—and its equitable power to do so is not delineated by sections 1501 and 1514(a).  In *Agro Dutch*, the Federal Circuit affirmed this Court's issuance of a reliquidation order to address CBP's inadvertent liquidation of entries in a manner inconsistent with an arrangement reached by the parties and the Court regarding a preliminary injunction order.  589 F.3d at 1192 ("[A] broad array of remedies (including reliquidation) is available to the court to rectify the unlawful liquidation.").  More specifically, in *Agro Dutch* the Federal Circuit affirmed that the Court had the equitable power to essentially revise the terms of a preliminary injunction order *nunc pro tunc*, to correct CBP's inadvertent liquidation of entries just before the preliminary injunction order took effect (the Government had previously represented to the parties and the Court that such liquidation would not occur).  *Id.* at 1191, 1194.  In affirming the Court's reliquidation order, the Federal Circuit addressed the equities that the Court had weighed below:

> While finality is an important goal, the interest in finality must give way in the face of a more compelling interest in this case: namely, effecting the intent of the parties and the court to prevent a premature liquidation while judicial review is ongoing.

*Id.* at 1193.  Similar to what occurred in *Agro Dutch*, the Court in *Home Products* issued a final judgment—thereby effectuating the intent of the parties, as presented in a Stipulation for Entry of Judgment—after years of litigation, and then CBP inadvertently liquidated in a manner inconsistent with that judgment.  The Court then issued an affirmative injunction to enforce the terms of its final judgment.  *Home Products*, 405 F. Supp. 3d 1368; *see Agro Dutch*, 589 F.3d at 1192 ("The trial court's discretion is not limited to the correction of clerical or typographical errors but encompasses the correction of errors needed to comport the order with the original understandings and intent of the court and the parties.").

12

The Court's ability to enforce its judgments does not expire when the 90-day period for CBP to voluntarily reliquidate elapses. *Home Products* reached this conclusion, as has the Federal Circuit. But Target has not. Instead, Target attempts to repurpose its rejected arguments as allegations in a new court action in an effort to retain a windfall under sections 1501 and 1514(a). The Court's decision in *Home Products* enforcing its final judgment, issued after more than a decade of litigation, and binding and recognized by all parties save Target for nearly two years now, is not so casually overturned in response to recycled arguments already reviewed and dismissed. Yet that is the relief, and grounds for relief, that Target now pleads. Target's efforts must be rejected outright. Consequently, Target's complaint should be dismissed for failure to state a claim upon which relief can be granted.

## III.    The Court's Decision in *Home Products* Is Consistent With *Cemex*

Target also alleges that "[t]he Court cannot use its Article III equitable powers to ignore the binding precedent of the CAFC in *Cemex*." Compl. ¶ 38; *see also* Compl. ¶¶ 30-36. Contrary to Target's mischaracterizations, the *Home Products* Court's issuance of an affirmative injunction to enforce its judgment is not at odds with the outcome in *Cemex*. As explained in detail below, *Cemex* involved erroneous liquidations that occurred under unique circumstances distinct from what occurred in *Home Products*, and the liquidations in *Cemex* were also attacked on a notably protracted timeframe, such that the legal analysis and weighing of the equities in that case led to a different outcome.

Specifically, *Cemex* involved a decision by CBP to retroactively treat certain entries as having been liquidated by operation of law, pursuant to 19 U.S.C. § 1504(d), even though the entries had not actually been liquidated in that manner. *Cemex*, 384 F.3d at 1321. Section 1504(d) provides that CBP must liquidate entries at the applicable antidumping rate within six

13

months after the removal of a suspension of liquidation, or else the entries "will be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record…"  19 U.S.C. § 1504(d).  When entries are liquidated pursuant to section 1504(d), the entries are said to have been "deemed liquidated," or liquidated by operation of law. 384 F.3d at 1320.

More specifically, in *Cemex,* CBP issued a public Bulletin Notice in April of 2001, stating that 121 entries had "deemed liquidated" at the cash deposit rate (instead of the higher final antidumping rate) as of September 23, 1998, which was six months after Commerce had sent erroneous liquidation instructions to CBP by e-mail on March 23, 1998.  384 F.3d at 1317, 1321.  This Court and the Federal Circuit both took issue with the content of the April 2001 Bulletin Notice, concluding that the March 23, 1998 liquidation instructions "e-mail was…ineffective in triggering the six month deemed liquidation period under section 1504(d)[,]" because Commerce's transmission of the liquidation instructions to CBP in March 1998 occurred "before the ninety-day deadline for filing petitions for certiorari [in the underlying case] had expired on April 8, 1998[,]"[4] and because the liquidation instructions were not made public.  384 F.3d at 1321.  In *Cemex* the Government also "failed to publish a notice of the amended final results in the Federal Register, as required by 19 U.S.C. § 1516a(e)."  384 F.3d at 1318 n.3.

These procedural deficiencies, present in *Cemex*, are simply not present here.  In a misguided attempt to analogize this action to *Cemex*, Target's complaint repeatedly and incorrectly alleges that the subject entries in this action "were deemed liquidated by operation of law under 19 U.S.C. § 1504(d) in March 2017."  Compl. ¶ 11; *see also* Compl. ¶¶ 23, 34.  Not so; the subject entries in this case never became deemed liquidated.  Rather, once the Court

---

[4]  In *Cemex*, liquidation was enjoined while litigation was pending.  384 F.3d at 1316.

issued the stipulated judgment in *Home Products* on December 8, 2016, Commerce—unlike in *Cemex*—timely and accurately published the amended final results in accordance with the Court's judgment on January 5, 2017 and timely and accurately issued liquidated instructions to CBP on January 23, 2017.  *See* am. final results; ECF No. 171-2, Court No. 07-00123.  CBP then timely and affirmatively liquidated the subject entries in March 2017, albeit at the incorrect antidumping duty rate for over 200 entries.  *Home Products*, 405 F. Supp. 3d at 1368, 1371, 1375.

Moreover, of significance, the Federal Circuit (agreeing with this Court) also concluded in *Cemex* that the April 2001 Bulletin Notice represented a "decision" by CBP for the purpose of considering the issue of finality, as the Bulletin Notice was "[m]ore than passive or ministerial, [such that] Customs' actions constitute[d] a 'decision' within the context of section 1514(a)." 384 F.3d at 1324.  Notably, nothing similar to CBP's posting of the problematic April 2001 Bulletin Notice occurred in *Home Products*.  Rather, CBP had liquidated Target's 40 entries timely, but incorrectly, in accordance with Commerce's proper liquidation instructions, and then this Court—and not CBP on its own initiative—ordered CBP to reliquidate the entries correctly, which it then did.

To understand the full context of *Cemex*, it is also important to recognize that the domestic industry in that case only sought reliquidation from the Court in April 2003, which was two years after CBP issued its liquidation decision in the form of the April 2001 Bulletin Notice, and five years after the Court had issued judgment.  384 F.3d at 1319, 1325.  This delay was found to be significant by both the Court and the Federal Circuit when considering the facts and equities presented in that case.  384 F.3d at 1319 (The domestic industry "'should have pursued whatever remedies it had to enforce the judgment here promptly.'") (quoting *Cemex, S.A. v.*

*United States*, 279 F. Supp. 2d 1357, 1363 (Ct. Int'l Trade 2003)).  Indeed, at the end of *Cemex*,

the Federal Circuit summarized the chain of events that unfolded in that case, thereby explaining

how the domestic industry (referred to as Ad Hoc) missed its opportunity by failing to diligently

monitor the liquidation process:

> Ad Hoc should have heeded the repeated warning signs. Ad Hoc
> should have perceived the first sign of trouble when Commerce
> failed to publish the required notice of the final duty assessment in
> the Federal Register.  In the absence of a Federal Register notice,
> Ad Hoc should have looked for public liquidation instructions
> from Commerce, which never issued.  Finally, Ad Hoc should
> have watched for the notice of liquidation…, [which was] not
> posted by Customs until [April 2001][,] some three years after the
> final judgment in [1998]…In view of these notable and noticeable
> omissions, Ad Hoc should have moved the Court of International
> Trade to enforce the judgment in 1998, rather than in 2003.

384 F.3d at 1325.

As in *Cemex*, the Court in *Home Products* also addressed and considered the facts and

equities presented, which led to a different—but just as appropriate—result, given the

circumstances.  Unlike the domestic industry's actions in *Cemex*, the *Home Products* Court

found that HPI and the Government took reasonable and timely steps to inform the Court of

CBP's erroneous liquidations, once they were discovered by the investigation conducted by

HPI's counsel.  *Home Products*, 405 F. Supp. 3d at 1375-76.  The Court also observed that

Target "remained silent upon receiving a fortuitous windfall when the erroneous liquidations

[initially] occurred…" *Id*. at 1376.  Thus, the Court rightfully concluded that "the equities do not

favor Target…" *Id.*  In *Home Products*, the equities favored the domestic industry—which

Target's complaint does not dispute—but in *Cemex*, they did not.

Furthermore, the Federal Circuit's discussion in *Cemex* of cases involving liquidations

that violated preliminary injunctions is significant because the Federal Circuit expressly stated

that such cases "*are distinguishable* [from *Cemex*][,] as…[they] involve[] liquidations in violation of an injunctive order." 384 F.3d at 1324 n.13 (emphasis added) (citing *AK Steel Corporation v. United States*, 281 F. Supp. 2d 1318 (Ct. Int'l Trade 2003) and *LG Electronics U.S.A., Inc. v. United States*, 991 F. Supp. 668 (Ct. Int'l Trade 1997)). Relatedly, several years after the *Cemex* decision (issued in 2004), the Federal Circuit further clarified the law in in the *Agro Dutch* decision (issued in 2009). *Agro Dutch*, 589 F.3d at 1192 ("[W]hen liquidation violates an injunction, not only does the [trial court] retain jurisdiction, but a broad array of remedies (including reliquidation) is available to the court to rectify the unlawful liquidation."). Thus, as the Federal Circuit made clear, *Cemex* in no way constrains courts from correcting erroneous liquidations made in violation of an injunctive order.

Given that injunctions in antidumping cases are available under 19 U.S.C. § 1516a(c)(2) to maintain the *status quo* so that the Court's final judgment is able to be applied to the appropriate unliquidated entries (some of which may otherwise be liquidated during the course of litigation) under 19 U.S.C. § 1516a(e), it would make little sense to allow the Court to order reliquidation to enforce an injunction, but not allow the Court to enforce its own judgment in the same manner. The *Home Products* Court recognized this principle in rejecting the overbroad reading of *Cemex* that Target now alleges as binding on the Court. As the Court explained, it is "difficult to understand the conclusion that Congress—having provided detailed and comprehensive rights for domestic interested parties within the trade remedy statutes—somehow intended that those very parties have no remedy to correct a Customs' error that wipes out years of litigation vindicating those rights." 405 F. Supp. 3d at 1377 (citing *Marbury v. Madison*, 5 U.S. 137, 147 (1803), emphasis omitted). Indeed, in *Cemex* itself, the Federal Circuit found it

necessary to recognize this fundamental principle by distinguishing *Cemex* from preliminary

injunction cases, so as not to cause confusion.  384 F.3d at 1324 n.13.

In sum, the *Home Products* Court's issuance of an affirmative injunction to enforce its

judgment was not "contrary" to *Cemex*, as Target alleges.  Compl. ¶ 30.  The procedural facts

and equities present in both cases are readily distinguishable from one another, as this Court in

*Home Products* has already found.  Target's arguments regarding the broad, binding nature of

*Cemex* have been considered and rejected by this Court once already in *Home Products*, and

have been rejected by the Federal Circuit on multiple occasions in other actions.  They should be

rejected here as well.  That the relief Target seeks in this action—reversal of the *Home Products*

decision—hinges on inapplicable precedent demonstrates the futility of entertaining Target's

action any further.  Target's complaint fails to state a claim upon which relief can be granted,

and it should be dismissed.

## IV.    The Doctrine of *Res Judicata* Supports the Dismissal of Target's Complaint

Target's complaint also warrants dismissal on *res judicata* grounds.  This Court has

explained that "*res judicata*—the doctrine of claim preclusion—bars repetitious suits involving

the same cause of action once a court of competent jurisdiction has entered a final judgment on

the merits."  *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 181 F. Supp. 3d

1348, 1353 (Ct. Int'l Trade 2016) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S.

307, 315 (2011)) (internal quotation marks omitted).  Under this doctrine, "[a] final judgment on

the merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in that action."  *Ammex Inc. v. United States*, 334 F.3d 1052, 1055 (Fed.

Cir. 2003) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  The Federal

Circuit has crafted a test that "to prevail on a claim of *res judicata*, the party asserting the bar

18

must prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex*, 334 F.3d at 1055 (citations omitted).  Based upon this standard, Target's action is claim-precluded from moving forward.

This action involves two parties: Target and the Government.  *Home Products* also involved the Government (and HPI and Since Hardware) and Target.  Although Target was never an official party to *Home Products*, the Court did allow Target to participate in that case as "a nonparty to the litigation with a substantial interest in the liquidation of the subject entries as an importer of record," pursuant to USCIT Rule 71.  405 F. Supp. 3d at 1375.  Similarly, Target appealed the Court's September 27, 2019 decision, not as an official party, but as a nonparty, movant-appellant.  ECF No. 34, CAFC Court No. 20-1202.  Because Target and the Government participated in both *Home Products* and this action, we submit that the first prong of the *Ammex* claim-preclusion test has been satisfied.

The second *Ammex* prong is clearly met insofar as a final judgment on the merits in *Home Products* was reached on December 8, 2016.  ECF No. 168, Court No. 07-00123.  Although that judgment required enforcement in the form of the Court's September 27, 2019 affirmative injunction, that decision also became final when the Federal Circuit dismissed Target's appeal and issued its mandate.  ECF No. 91, CAFC Court No. 20-1202.

The third and final prong of the *Ammex* test has also been met because Target's action is not only "based on the same set of transactional facts" that *Home Products* was finally decided (*i.e.*, the *Home Products* Court's decision to reliquidate the subject entries consistent with its final judgment), but Target's current action is expressly and solely a renewed challenge to *Home Products*.  Compl. at p. 5.  Indeed, as explained at length above, the arguments that Target

alleges in its present complaint are the same arguments that this Court considered and rejected in deciding *Home Products*.  Target's action simply would not exist but for *Home Products*.

In furtherance of this point, we note that Target could have moved the *Home Products* Court for the relief it seeks in this action—reconsideration of the Court's September 27, 2019 decision ordering reliquidation of Target's entries—pursuant to Rule 59(e) (alter or amend a judgment) and/or 60 (relief from a judgment or order).  *See Home Products*, 405 F. Supp. 3d at 1374-75 (allowing Target to appear, pursuant to USCIT Rule 71, in supplementary proceedings to enforce the *Home Products* Court's judgment).  But Target did not pursue such proper avenues of relief in *Home Products*.  Rather, Target has chosen to commence this action as a secondary means to revisit the Court's decision in *Home Product*.  In doing so, Target has initiated an unauthorized, collateral attack on the Court's decision in *Home Products*.  Target's efforts are neither timely nor properly made, and must be rejected.

Accordingly, because this action attempts to reopen and repeat the now-concluded *Home Products* litigation, Target should be barred from proceeding any further on *res judicata* grounds.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that this Court grant our motion, dismiss

plaintiff's complaint with prejudice, and enter judgment for defendant.

                              Respectfully submitted,

                              BRIAN M. BOYNTON
                              Acting Assistant Attorney General

                              JEANNE E. DAVIDSON
                              Director

                              /s/ Justin R. Miller
                              JUSTIN R. MILLER
                              Attorney-in-Charge
                              International Trade Field Office

Of Counsel:                   /s/ Alexander Vanderweide
Edward N. Maurer              ALEXANDER VANDERWEIDE
Deputy Assistant Chief Counsel Senior Trial Attorney
International Trade Litigation Department of Justice, Civil Division
U.S. Customs & Border Protection Commercial Litigation Branch
                              26 Federal Plaza, Room 346
                              New York, New York 10278
                              Tel. (212) 264-9230 or 0482
                              Attorneys for Defendant

June 22, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, JUDGE

| | | |
|---|---|---|
| | : | |
| TARGET CORPORATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00162 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT</u>
<u>STANDARD CHAMBER PROCEDURE 2(B)</u>

I, Alexander Vanderweide, a Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing memorandum, relying upon the word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 6516 words.

/s/ Alexander Vanderweide