UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, JUDGE

| | | |
|---|---|---|
| TARGET CORPORATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00162 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS**

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

Of Counsel:
Edward N. Maurer
Deputy Assistant Chief Counsel
International Trade Litigation
U.S. Customs & Border Protection

ALEXANDER VANDERWEIDE
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-9230 or 0482
Attorneys for Defendant

August 13, 2021

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................. 2

I.      OUR MOTION TO DISMISS IS PROCEDURALLY PROPER .............................. 2

II.     THE COURT'S AFFIRMATIVE INJUNCTION IN *HOME PRODUCTS* DOES
        NOT RUN AFOUL OF 19 U.S.C. §§ 1514(a) AND 1501 ........................................ 4

        A.   The Court may order reliquidation to protect the integrity of its judgment because
             the constraints of 19 U.S.C. § 1514 do not apply here .......................................... 4

        B.   The constraints of 19 U.S.C. § 1501 do not apply to the facts of this case ........... 7

        C.   Target's entries did not deem liquidate by operation of law pursuant to 19 U.S.C.
             § 1504(d) ................................................................................................................. 10

III.    THE *HOME PRODUCTS* COURT FOLLOWED THE REMEDIAL PROCEDURES
        DIRECTED BY THE COURT OF APPEALS IN *CEMEX* ..................................... 12

IV.     THE COURT'S REMEDIAL MEASURES ARE CONSISTENT WITH 19 U.S.C. §
        1516a ........................................................................................................................ 15

V.      THIS ACTION SHOULD BE DISMISSED ON *RES JUDICATA* GROUNDS ...... 17

CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

## Cases

*Agro Dutch Indus. Ltd. v. United States*,
    589 F.3d 1187 (Fed. Cir. 2009) ............................................................................. 5, 14

*Am. Signature, Inc. v. United States*,
    598 F.3d 816 (Fed. Cir. 2010) .................................................................................. 7

*Cemex, S.A. v. United States*,
    279 F. Supp. 2d 1357 (Ct. Int'l Trade 2003) .......................................................... 13
    384 F.3d 1314 (Fed. Cir. 2004) ........................................................................ *passim*

*Heartland By-Prod., Inc. v. United States*,
    424 F.3d 1244 (Fed. Cir. 2005) ................................................................................. 6

*Home Prods. Int'l, Inc. v. United States*,
  405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019) ................................................. *passim*
  846 Fed. Appx. 890 (Fed. Cir. 2021) ................................................................ 3

*Peacock v. Thomas*,
  516 U.S. 349 (1996) ....................................................................................... 6

*Shinyei Corp. v. United States*,
  355 F.3d 1297 (Fed. Cir. 2004) ................................................................... 5, 6

*SSAB North American Div. v. U.S. Bureau of Customs and Border Protection*,
  571 F. Supp. 2d 1347 (Ct. Int'l Trade 2008) ............................................. 7, 8, 9

*United Pac. Ins. Co. v. United States*,
  464 F.3d 1325 (Fed. Cir. 2006) ..................................................................... 4

*United States v. Hanover Ins. Co.*,
  82 F.3d 1052 (Fed. Cir. 1996) ...................................................................... 6

**Statutes, Regulations, and Rules**

19 U.S.C. § 1500 ............................................................................................. 7

19 U.S.C. § 1501 ..................................................................................... *passim*

19 US.C. § 1504 ............................................................................................. 7

19 U.S.C. § 1504(d) ............................................................................ 10, 11, 12

19 US.C. § 1514 ...................................................................................... 1, 6, 8

19 U.S.C. § 1514(a) ................................................................................ *passim*

19 U.S.C. § 1514(b) ....................................................................................... 6

19 U.S.C. § 1516a ................................................................................. 6, 8, 15

19 U.S.C. § 1516a(e)(2) ............................................................................ 15, 16

28 U.S.C. § 1581(c) ...................................................................................... 15

28 U.S.C. § 1585 ........................................................................................... 5

28 U.S.C. § 2643(c)(1) .............................................................................. 5, 16

USCIT Rule 7(b) ................................................................................................................. 9

USCIT Rule 7(b)(1) ........................................................................................................... 4

USCIT Rule 12(b)(6) .................................................................................................. 1, 2, 4

USCIT Rule 12(c) ............................................................................................................... 4

USCIT Rule 12(d) .............................................................................................................. 4

USCIT Rule 56 ................................................................................................................... 4

USCIT Rule 71 ................................................................................................................... 3

**<u>Additional Materials</u>**

*Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's
    Republic of China,*
    82 Fed. Reg. 1,322 (Dep't of Commerce Jan. 5, 2017) .......................................... 12

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, JUDGE

|  |  |  |
|---|---|---|
| TARGET CORPORATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00162 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS**

Defendant, United States (the Government), respectfully submits this memorandum in

reply to plaintiff's, Target Corporation's (Target), response (Pl. Resp.) to our USCIT Rule

12(b)(6) motion to dismiss.

In our motion, we demonstrated that Target's action should be dismissed for failure to

state a claim upon which relief may be granted because Target's complaint asks the Court to

reconsider and reverse its decision in *Home Prods. Int'l, Inc. v. United States*, 405 F. Supp. 3d

1368 (Ct. Int'l Trade 2019) (*Home Products*), and award Target—in violation of multiple court

orders to the contrary—a windfall of duties properly collected by U.S. Customs and Border

Protection (CBP).  Further, we showed that the *Home Products* Court properly considered and

rejected the legal arguments that Target advances in its complaint, namely that 19 U.S.C. §§

1501 and 1514, and *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004) (*Cemex*),

preclude the Court from issuing an affirmative injunction to enforce its final judgment.  Thus, by

seeking relief predicated on legal argument that this Court has already considered, rightly

rejected, and ordered otherwise, we explained that Target's action warrants dismissal on both *res judicata* grounds and for failure to state a claim upon which relief may be granted.

In its response, Target first posits that our motion to dismiss is procedurally improper. Pl. Resp. at 1-2. On the merits, Target repeats the arguments from its complaint, namely that the Court's September 27, 2019 affirmative injunction "was an *ultra vires* act that is flatly contrary to the decision of the Federal Circuit in the *Cemex* case," and that "Customs failed to reliquidate the entries at the proper rate within the 90 days permitted under 19 U.S.C. § 1501 and as a result, the original liquidations became final and conclusive by operation of law under 19 U.S.C. § 1514(a)." Pl. Resp. at 6-7. In support of the latter argument, Target contends that these statutory provisions foreclose the *Home Products* Court from balancing the equities and awarding equitable relief. Pl. Resp. at 11-13, 20, 22. To support its former argument, Target maintains that only *Cemex* is dispositive of the outcome of *Home Products*, not the cases that were discussed in our opening papers. Pl. Resp. at 17-20.

For the reasons set forth below, Target's arguments fail, and as a result, our motion to dismiss should be granted.

## ARGUMENT

## I.    OUR MOTION TO DISMISS IS PROCEDURALLY PROPER

Target argues that our motion to dismiss pursuant to USCIT Rule 12(b)(6) is incorrectly made. Pl. Resp. at 1. Instead, Target contends that "defendant should have filed either a motion for judgment on the pleadings or for summary judgment after filing an answer," and asks the Court to treat our motion to dismiss as such. Pl. Resp. at 2. Target is mistaken; our motion to dismiss is procedurally proper.

The proceedings in *Home Products* have concluded, and all of the entries subject to that

litigation, including Target's, have been properly liquidated or reliquidated in accordance with (1) the *Home Products* parties' December 8, 2016 Stipulation For Entry of Judgment, (2) the Court's entry of that proposed judgment on the same day, (3) the Department of Commerce's (Commerce) published amended final results and (4) liquidation instructions to CBP reflecting that judgment, (5) the Court's October 27, 2017 order directing reliquidation in conformance with the judgment, and (6) the Court's September 27, 2019 affirmative injunction to enforce the judgment.  In the time shortly after the October 2017 order until the September 2019 affirmative injunction, Target was permitted to participate, pursuant to USCIT Rule 71, in the supplementary proceedings to enforce the Court's judgment.  *Home Products*, 405 F. Supp. 3d at 1374-75; *see also* ECF 181, Court No. 07-00123, November 15, 2017 Memorandum and Order ("To afford Target the opportunity to address the issue of reliquidation, the court will stay the implementation of its October 27th Order.").  In so participating, Target argued, on the papers, that the Court cannot enforce its judgment by ordering reliquidation of Target's entries.  ECF Nos. 173, 176, 177, 184, 192, Court No. 07-00123.  The Court considered Target's arguments and rejected them.  Target then appealed the Court's September 27, 2019 decision, but the appeal was dismissed due to its procedural deficiencies.  *Home Prods. Int'l, Inc. v. United States*, 846 Fed. Appx. 890 (Fed. Cir. 2021).

Target's present action revisits the supplemental enforcement proceedings in *Home Products* and the relief the Court ordered to conclude the litigation.  In particular, Target seeks a refund of the duties that it paid when CBP reliquidated Target's entries in accordance with the Court's affirmative injunction—relief that the *Home Products* decision foreclosed.  Compl. at p. 5; *Home Products*, 405 F. Supp. 3d at 1378.  And Target does so based upon argument that the Court has already considered and rejected in the *Home Products* litigation.  In other words, the

ultimate relief Target seeks here has already been sought and it has already been denied. Nonetheless, Target asks the Court to reach a different result here than it did in *Home Products*, but for essentially the same reasons previously presented to the Court.  Because Target's complaint presents no new factual considerations or legal arguments for the Court to revisit the concluded litigation, it is procedurally proper that this action be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).  *See United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1333 (Fed. Cir. 2006) (holding that a prior *en banc* decision of the court compels the conclusion that plaintiff is not entitled to the relief it seeks).

Further, a motion on the pleadings is not appropriate when, as here, a party has not answered the complaint.  USCIT Rule 12(c).  Although Target is correct that the Court may convert a Rule 12(b)(6) motion to dismiss to a USCIT Rule 56 motion for summary judgment, we respectfully submit that conversion is unnecessary here because our motion to dismiss does not depend upon matters presented outside of Target's complaint.  USCIT Rule 12(d).

Finally, we note that Target's response to our motion is itself procedurally improper insofar as it seeks affirmative relief, *i.e.*, judgment in favor of plaintiff and its entries reliquidated with a refund, plus interest, of the antidumping duties collected by CBP, *see* Order to Pl. Resp., without cross-moving for such relief.  *See* USCIT Rule 7(b)(1) ("A request for a court order must be made by motion.").

## II.   THE COURT'S AFFIRMATIVE INJUNCTION IN *HOME PRODUCTS* DOES NOT RUN AFOUL OF 19 U.S.C. §§ 1514(a) AND 1501

### A.  The Court may order reliquidation to protect the integrity of its judgment because the constraints of 19 U.S.C. § 1514 do not apply here

Target incorrectly asserts that "{u}nder *Cemex*, [this Court] cannot use its equitable powers to disregard or nullify [the limitations of sections 1501 and 1514(a)] and their finality as

provided by Congress." Pl. Resp. at 20.  As explained in our moving papers, Def. Mot. at 7-13,

this Court is empowered to weigh the equities and decide whether an affirmative injunction

should be issued to enforce its judgment when CBP inadvertently liquidates inconsistent with the

judgment.  *See* 28 U.S.C. §§ 1585, 2643(c)(1).  As such, the Court's equitable authority to order

reliquidation to enforce and protect its judgment, given the circumstances of this case, are not

constrained by the finality provisions of sections 1514(a) and 1501.

19 U.S.C. § 1514(a) specifically concerns protests that importers may file against CBP

decisions.  Section 1514(a) states that liquidation does not become final and conclusive when an

importer files a timely protest with CBP, and if applicable, a court action to challenge a denied

protest.[1]  The provision does not speak to, let alone limit, the Court's inherent equitable power to

enforce its judgments through reliquidation, as circumstances (such as here) warrant.  The

Federal Circuit has made this clear in various contexts.  *See, e.g., Agro Dutch Indus. Ltd. v.

United States*, 589 F.3d 1187, 1193 (Fed. Cir. 2009) (explaining that "{w}hile finality is an

important goal, the interest in finality must give way in the face of a more compelling interest in

this case: namely, effecting the intent of the parties and the court to prevent a premature

liquidation while judicial review is ongoing."); *Shinyei Corp. v. United States*, 355 F.3d 1297,

1312 (Fed. Cir. 2004) (wherein the court "decline[d] to find that the statute [imposing finality

---

[1] 19 U.S.C. § 1514(a) states, in relevant part here, as follows:

> [A]ny clerical error, mistake of fact, or other inadvertence, whether
> or not resulting from or contained in an electronic transmission,
> adverse to the importer, in any entry, liquidation, or reliquidation,
> and, decisions of the Customs Service…as to…(5) the liquidation or
> reliquidation of an entry…shall be final and conclusive upon all
> persons…unless a protest is filed in accordance with this section, or
> unless a civil action contesting the denial of a protest…is
> commenced in the United States Court of International Trade…

upon liquidations] as a whole was intended to preclude judicial enforcement of court orders after liquidation.").

The Court's inherent authority to enforce its judgments is necessarily broad so that the integrity of a given judgment can be protected when necessary and appropriate. *See Peacock v. Thomas*, 516 U.S. 349, 356, 359 (1996); *United States v. Hanover Ins. Co*., 82 F.3d 1052, 1054 (Fed. Cir. 1996). Indeed, "'[w]ithout jurisdiction to enforce a judgment…, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" *Heartland By-Prod., Inc. v. United States*, 424 F.3d 1244, 1251 (Fed. Cir. 2005) (quoting *Peacock*, 516 U.S. at 356) (citation omitted).

Thus, in *Home Products*, the Court duly considered "whether to enforce its judgment through an affirmative injunction, which the court decides by balancing the proper assessment and collection of antidumping duties with the finality of liquidation." 405 F. Supp. 3d at 1373. In rejecting Target's argument that the finality considerations of section 1514(a) foreclose the Court from balancing the equities, the *Home Products* Court rightly concluded that "the principle of finality codified in § 1514 is not a bar to [the Court] correcting Customs' errors in liquidating subject entries covered by [a] trade action." 405 F. Supp. 3d at 1377; *see also id*. at 1373 ("When Customs liquidates an entry, the finality considerations of § 1514[(a)] always lurk in the background except when the Court of International Trade takes jurisdiction over the entries in an action under § 1516a.") (citing 19 U.S.C. § 1514(b), emphasis omitted). In *Home Products*, therefore, the Court carefully weighed the equities and exercised its inherent power to order reliquidation in conformance with its judgment and the terms agreed to by the parties when resolving the litigation. Section 1514(a) does not preclude the Court's considered approach and the relief ordered.

**B.  The constraints of 19 U.S.C. § 1501 do not apply to the facts of this case**

Target also argues that 19 U.S.C. § 1501 restricts the *Home Products* Court from ordering reliquidation consistent with its judgment.  *See* Pl. Resp. at 13 ("…[section 1501] plainly and unambiguously states that reliquidation must occur within 90 days …The Court in *Home Products* lacked the authority to disregard the statute and the finality it guarantees to the importer.").  This is wrong.

As explained in our moving papers, Def. Mot. at 10-11, section 1501—titled "Voluntary reliquidations by U.S. Customs and Border Protection"—circumscribes when *CBP* may *voluntarily* reliquidate.  19 U.S.C. § 1501.[2]  By its express terms, section 1501 applies only to liquidations and reliquidations made by CBP under section 1500, and the limitations imposed upon those liquidations and reliquidations under section 1504.  Plainly and unambiguously, the provision does not restrain the *Court* from ordering reliquidation beyond section 1501's ninety-day period so that it may enforce a judgment from a section 1516a proceeding—such as what occurred in *Home Products*.  *See Am. Signature, Inc. v. United States*, 598 F.3d 816, 829-30 (Fed. Cir. 2010) (explaining that "{w}e cannot agree that Commerce is without a remedy if the ninety-day period elapses without reliquidation,…[as] the deadline is inapplicable if reliquidation is ordered by a court."); *see SSAB North American Div. v. U.S. Bureau of Customs and Border Protection,* 571 F. Supp. 2d 1347, 1352 (Ct. Int'l Trade 2008) ("First, § 1501 simply authorizes Customs, in its discretion, to revisit a liquidation within 90 days of the notice.  It does

---

[2] 19 U.S.C. § 1501 states, in relevant part here, as follows:

> A liquidation made in accordance with section 1500 or 1504 of this title or any reliquidation thereof made in accordance with this section may be reliquidated in any respect by U.S. Customs and Border Protection, notwithstanding the filing of a protest, within ninety days from the date of the original liquidation…

not confer any rights on Plaintiffs and therefore does not constitute a 'remedy' for Plaintiffs that would preclude injunctive relief.").

In an attempt to apply section 1501 beyond its confines, Target cites 2016 testimony from CBP's then-Commissioner, Gil Kerlikowske, at a Congressional hearing. *See* Pl. Resp. at 14. Yet the testimony cited by Target merely reiterates the text of section 1501 itself, namely that "…if an importer does not file a protest and the entry is beyond the 90-day voluntary reliquidation period, the liquidation of an entry becomes final and CBP is statutorily barred from changing the liquidation."). *Id*. Far from supporting Target's position on section 1501, Commissioner Kerlikowske's testimony describes that, absent a protest, section 1501 limits *CBP* to making *voluntary* reliquidations within 90 days of the original liquidation. But that is not the case, and never was, with Target's entries. The 224 reliquidations at issue in *Home Products* were not made voluntarily by CBP on its own accord pursuant to section 1501. Rather, CBP was ordered by the Court to make the reliquidations so that the Court's judgment could be properly carried out. Nothing in Commissioner Kerlikowske's testimony suggests that court-ordered reliquidations resulting from a section 1516a action are bound by section 1501. Like the finality constraints imposed upon importers by section 1514, the reliquidation constraints imposed upon CBP by section 1501 neither speak to, nor limit, the Court's authority to order reliquidation consistent with its judgment.

Procedurally, Target finds fault with the Government's decision to inform the Court in a Status Report, as opposed to a formal motion, of the 224 incorrectly liquidated entries (and that CBP was prepared to reliquidate expeditiously in response to an order from the Court). *See* Pl. Resp. at 16 ("The 'Status Report' is actually not a status report at all, but a thinly disguised request for a court order overriding the reliquidation time period in 19 U.S.C. § 1501 that should

have been made in the form of a motion in accordance with Rule 7(b)."); October 20, 2017 Status Report, ECF No. 171, Court No. 07-00123.

Target unfairly criticizes the Government for promptly informing the Court in good faith of CBP's noncompliance with the Court's judgment, for conveying its desire to comply with the Court's judgment, and for explaining the statutory limitation on CBP's ability to correct the liquidations on its own accord. The Government would have been remiss if it had not expeditiously alerted the Court of CBP's errors and "reported" the "status" of the Government's compliance—or lack thereof—with the Court's judgment. Once the Government had apprised the Court in the Status Report of the circumstances surrounding the 224 incorrect liquidations, ultimately it was left to the Court's judgment what action, if any, was appropriate for the Court to remedy the situation. *See SSAB North American*, 571 F. Supp. 2d at 1354 ("The only way Customs could fix the problem was therefore pursuant to a court ordered injunction.").

Moreover, although the Government had filed the Status Report, Home Products remained intent on filing a motion for an order to show cause why the Government should not be held in contempt for violating the Court's judgment. *See* ECF No. 182, Court No. 07-00123 at pp. 12-13. Indeed, on October 23, 2017, Home Products advised Government counsel and the Court's Case Manager that it would move for a contempt ruling against the Government. *Id*. at p. 13. However, on October 26, 2017, the Court communicated to the parties that "{b}ased on the Status Report filed by the Government, the court is prepared to issue an order to effectuate the reliquidation of the subject merchandise. Consequently, there is no need for any other filings. Attached for your review is a draft order…" Exhibit 1 to ECF No. 180, Court No. 07-00123. Upon review and acceptance of the draft order by the parties, on October 27, 2017, the Court entered the reliquidation Order. *See id*.; ECF No. 172, Court No. 07-00123. Thus, the

Court found that formal motion papers were not required for it to issue a reliquidation order that all parties had reviewed and cleared.

Target cannot, therefore, claim that it was denied due process by the absence of a formal motion, Pl. Resp. at 16, when it (1) was not a party or a participant to the proceedings at this juncture, and (2) was nonetheless able to successfully stay the implementation of the Court's October 27, 2017 reliquidation order so that it could appear in supplemental proceedings to challenge the order.  *See* ECF No. 181, Court No. 07-00123.  Despite its grievance with the form of the Status Report, Target had its day in court to challenge the reliquidation order.

### C.  Target's entries did not deem liquidate by operation of law pursuant to 19 U.S.C. § 1504(d)

In our moving papers, we demonstrated that *Cemex* is both factually distinguishable from, and legally consistent with, the decision in *Home Products*, and thus, Target's attempts to revisit and reverse the *Home Products* decision on account of *Cemex* must be rejected.  *See* Def. Mot. at 13-18.  Target disagrees and contends "that factually and legally *Cemex* is on all fours with this case."  Pl. Resp. at 16.  To support this contention, Target, once again, incorrectly states that "{t}he simple fact of the matter is that in both *Cemex* and this case [the] liquidations occurred by operation of law, pursuant to 19 U.S.C. § 1504(d)…"  Pl. Resp. at 9, fn. 4.  *See also* Pl. Resp. at 5 ("…the entries which are the subject of this action were deemed liquidated by operation of law under 19 U.S.C. § 1504(d) in March at the original dumping duty rate of 9.47% under which the merchandise was entered.") and at 8-9.

In *Cemex*, on March 23, 1998—after failing to publish a notice of the amended final results in the Federal Register reflecting the judgment of this Court—Commerce emailed CBP ambiguous, untimely, and non-public instructions to liquidate the subject entries at the court-ordered final assessment antidumping duty rate of 106.846 percent *ad valorem*.  384 F.3d at

10

1316, 1318, 1321.  Despite the legally deficient instructions, nearly all of the subject entries, except for those at the Port of Nogales, were liquidated at the correct final assessment rate.  *Id*. at 1316-17.  But the Port of Nogales did not obtain the instructions until three years later in March 2001.  *Id*. at 1317.  Because of the time that had elapsed, Nogales assumed (incorrectly) that the covered entries at its port liquidated by operation of law pursuant to 19 U.S.C. § 1504(d)[3] at the "as entered" cash deposit rate of 56.94 percent *ad valorem*.  *Id*.  In order to acknowledge the deemed liquidations (again, incorrectly) and to liquidate any unliquidated covered entries, on April 6, 2001, CBP published a bulletin notice at the port "indicating that 121 of the Nogales Entries had been deemed liquidated as of September 23, 1998, and that 19 others had liquidated at 'no change.'  All 140 entries were thus liquidated at the rate and amount of duties asserted by the importer upon entry, 56.94 percent *ad valorem*."  *Id*.  Although the legally deficient email from Commerce was "ineffective in triggering the six month deemed liquidation period under section 1504(d)," *id*. at 1321, the Federal Circuit ruled that "Customs made an affirmative determination to acknowledge and implement the deemed liquidation of the Nogales Entries pursuant to Commerce's March 23, 1998 e-mail."  *Id*. at 1323.

*Home Products* involves markedly different facts.  In *Home Products*, on December 8, 2016, the Court dissolved the preliminary injunction in effect and issued a final judgment for CBP to liquidate the relevant entries at a final weighted-average dumping margin of 72.29 percent.  ECF No. 168, Court No. 07-00123.  Unlike in *Cemex*, Commerce then published amended final results in accordance with the final judgment and issued CBP valid and correct

---

[3] Relevant here, section 1504(d) provides that CBP must liquidate entries at the applicable antidumping rate within six months of a court-ordered suspension of liquidation being removed or else the entries "will be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record…"  19 U.S.C. § 1504(d).

liquidation instructions.  *See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China*, 82 Fed. Reg. 1,322 (Dep't of Commerce Jan. 5, 2017); ECF No. 171-2, Court No. 07-00123 (Message No. 7023304 (Jan. 23, 2017)).  Upon receiving the instructions, CBP timely and affirmatively liquidated all of the covered entries in March 2017.  *Home Products*, 405 F. Supp. 3d at 1368, 1371, 1375.  Although CBP accurately liquidated hundreds of entries at the correct rate of 72.29 percent, the agency also erroneously and affirmatively liquidated 224 entries—including 40 of Target's entries—"no change" at the cash deposit antidumping duty rate in effect at the time of entry, which was 9.47 percent.  *Id.*

Because *all* of the entries covered by the *Home Products* final judgment were affirmatively liquidated by CBP less than four months after the Court dissolved the preliminary injunction and Commerce issued valid instructions, none of the covered entries, including the 224 entries erroneously liquidated "no change" at the deposit rate, remained unliquidated after six months.  Therefore, none of the *Home Products* entries become deemed liquidated by operation of law pursuant to section 1504(d), as Target asserts.  Based on this difference alone, *Home Products* is not on all fours with *Cemex*, as Target contends.

III.    **THE *HOME PRODUCTS* COURT FOLLOWED THE REMEDIAL PROCEDURES DIRECTED BY THE COURT OF APPEALS IN *CEMEX***

In *Cemex*, the Court of Appeals held that the domestic petitioner Ad Hoc was foreclosed by section 1514(a) from challenging the improper liquidations because, unlike importers, domestic producers do not have protest rights to challenge CBP decisions.  384 F.3d at 1318, 1322-23.  However, section 1514(a) did not automatically end the Federal Circuit's inquiry into potential avenues of relief for Ad Hoc, as this final paragraph from the decision demonstrates:

> This result, while seemingly harsh, was not unavoidable, as Ad Hoc should have heeded the repeated warning signs. Ad Hoc should have perceived the first sign of trouble when Commerce failed to publish

> the required notice of the final duty assessment in the Federal
> Register. In the absence of a Federal Register notice, Ad Hoc should
> have looked for public liquidation instructions from Commerce,
> which never issued. Finally, Ad Hoc should have watched for the
> notice of liquidation at the Port of Nogales, not posted by Customs
> until some three years after the final judgment in *Cemex I*. In view
> of these notable and noticeable omissions, Ad Hoc should have
> moved the Court of International Trade to enforce the judgment in
> 1998, rather than in 2003. Here, where Congress declined to give
> domestic producers protest rights, monitoring the enforcement of its
> court judgment fell upon Ad Hoc. Unfair as that may seem, the
> proper forum for remedying the harshness of the statute is Congress,
> not this court.

*Id*. at 1325; *see also Cemex, S.A. v. United States*, 279 F. Supp. 2d. 1357, 1363 (Ct. Int'l Trade 2003) (*Cemex I*) ("Ad Hoc should have pursued whatever remedies it had to enforce the judgment here promptly.  Enforcement at this date would prejudice other parties by disrupting finality and the Byrd Amendment distribution scheme.").

These passages undermine Target's assertion that "{t}he Federal Circuit did not consider the equities because it decided [*Cemex*] as a matter of law, not equity," and Target's conclusion that "the Court does not have the power to grant the equitable relief sought in this case."  Pl. Resp. at 22; *see also* Pl. Resp. at 12 ("This is not an equitable matter; it is a matter of law."). Although the equities did not favor Ad Hoc in *Cemex*, it does not follow that *Cemex* forbids equitable relief in other circumstances where appropriate.  Indeed, the above-quoted passages strongly indicate that if domestic producers, like Ad Hoc, are to avoid the inequity of entries not being liquidated at the correct rate in accordance with a court-ordered judgment, then they should diligently monitor the agencies tasked with executing the Court's judgment and promptly move the Court to enforce the judgment.  On that account, despite the legal roadblock to relief presented to Ad Hoc by the protest remedies of section 1514(a), an equitable path for relief was available to Ad Hoc, if only it acted accordingly.  But it did not, and the Court and Federal

Circuit in *Cemex* both declined to grant Ad Hoc equitable relief.

Such is not the case here.  First, as explained above, the Court in *Home Products* was not statutorily restricted from ordering reliquidation consistent with its final judgment.  Further, the *Home Products* Court did not order reliquidation without first balancing the equities.  *See Home Products*, 405 F. Supp. 3d at 1377 ("…whether the court corrects the liquidations and enforces the judgment depends on a weighing of equitable factors in each case.").  In doing so, the Court found that Home Products and the Government took reasonable steps to promptly inform the Court of the 224 erroneous liquidations once they were discovered by Home Products' counsel, while Target "remained silent upon receiving a fortuitous windfall when the erroneous liquidations [initially] occurred…"  *Id*. at 1375-76.  The Court thus concluded that "the equities do not favor Target…," and issued an affirmative injunction for CBP to reliquidate the 224 entries consistent with the final judgment.  *Id*. at 1376, 1378.

Target would be hard-pressed to challenge the Court's equitable balancing in *Home Products* and claim that the equities should be weighed in its favor.  And nor does it.  Instead, the relief Target ultimately seeks, reversal of the 224 court-ordered reliquidations from nearly two years ago—which at this late stage would "…give rise to [ ] real uncertainty…" by undermining the intent of the parties and the Court to resolve the *Home Products* litigation on agreed-upon terms, *Agro Dutch*, 589 F.3d at 1193-94—is predicated on the unsupportable contention that the Court was forbidden from using its equitable powers to order reliquidation on account of sections 1501 and 1514(a) and *Cemex*.  This contention, already considered and rejected by the *Home Products* Court, is likewise properly rejected here.  Because sections 1501 and 1514(a) do not prohibit the 224 court-ordered reliquidations, and because *Cemex* neither conflicts with nor controls the outcome in *Home Products*, Target's entire basis for relief in the present action falls

14

apart.  Thus, Target's complaint and its response to our motion to dismiss presents no new factual considerations or valid legal arguments for the Court to revisit and reverse its decision in *Home Products*.  Consequently, this action should be dismissed for failure to state a claim upon which relief may be granted.

## IV.    THE COURT'S REMEDIAL MEASURES ARE CONSISTENT WITH 19 U.S.C. § 1516a

By focusing on the (in)applicability of sections 1501 and 1514(a), Target disregards 19 U.S.C. § 1516a—the governing statute regarding liquidation of the *Home Products* entries—and the terms of the December 8, 2016 Stipulation For Entry of Judgment and the Court's judgment entering the stipulation.

19 U.S.C. § 1516a provides that court-enjoined entries during the pendency of a section 1581(c) action to contest the final results of an applicable antidumping duty rate—such as the entries in *Home Products*— "shall be liquidated in accordance with the final court decision in the action."  19 U.S.C. § 1516a(e)(2).  It necessarily follows that, under section 1516a(e)(2), all of the entries covered by the *Home Products* litigation—including the 224 erroneously liquidated entries—must actually "be liquidated in accordance with the final court decision."  For the terms of section 1516a(e)(2) to be heeded, therefore, the 224 entries in question would need to be reliquidated at the final ordered antidumping duty rate of 72.29 percent.  *See Cemex*, 384 F.3d at 1323 ("Operating under the mistaken belief that the March 23, 1998 email from Commerce had been timely and valid, Customs chose to recognize the legal fiction of deemed liquidation at the 'as entered' rate rather than apply section 1516a(e)(2) to liquidate the subject entries at the final rate of 106.846 percent *ad valorem*.").

Because the 224 erroneously liquidated entries were not "liquidated in accordance with the final court decision," we submit that whatever remedial measures are available to the Court

15

to ensure that the entries are indeed "liquidated in accordance with the final court decision," including ordering reliquidation consistent with the final court decision, are appropriately made to effect both the Court's final judgment and the terms of section 1516a(e)(2).  *See* 28 U.S.C. § 2643(c)(1) ("…the Court of International Trade may…order any other form of relief that is appropriate in a civil action…").  And that is what the Court did.  By issuing its September 27, 2019 affirmative injunction, which CBP thereafter complied with, the Court properly ensured that all of the *Home Products* entries were "liquidated in accordance with the final court decision."

The terms of section 1516a(e)(2) are echoed in the December 8, 2016 Stipulation For Entry of Judgment, which set forth the terms of settlement by the *Home Products* parties, and provides, in part, that "Once the entries are liquidated pursuant to the terms of the Court's judgment arising from this stipulation, this matter shall be concluded."  ECF No. 167, Court No. 07-00123, at ¶4.  Further, the Court's judgment from the same day, which effected the stipulation and proposed judgment submitted by the parties, ordered, in part, as follows:

> ORDERED that the judgment is entered in accordance with the stipulation of settlement by the parties; it is further…
>
> ORDERED that the injunction enjoining liquidation of the subject merchandise in this action, *see Home Products International, Inc. v. United States*, Court No. 07-00123 (CIT Apr. 18, 2007), ECF No. 11 (prelim. inj. order), shall be dissolved, and the covered entries be liquidated in accordance with this entry of judgment; and it is further…

ECF No. 168, Court No. 07-00123.  Thus, the Court's decision to weigh the equities and order reliquidation ensured that all of the entries subject to the *Home Products* litigation were indeed liquidated at the agreed-upon and court-ordered rate of 72.29 percent.

## V.     THIS ACTION SHOULD BE DISMISSED ON *RES JUDICATA* GROUNDS

In its response, Target argues that this action cannot be dismissed on *res judicata* grounds, as we contend in our moving papers, Def. Mot. at 18-20, because it was not a party to the *Home Products* litigation, and that as a nonparty "…Target was locked out of the *Home Products* case in the final decision ordering reliquidation."  Pl. Resp. at 24.  This is not true. Although Target was not a party to the merits portion of the *Home Products* litigation (and nor did it seek such status), the *Home Products* litigation remained open for nearly two years after the Court initially ordered reliquidation in October 2017 specifically so that Target, as a nonparty participant to the supplement enforcement proceedings, could present argument against reliquidation—argument that the Court duly considered and ultimately rejected.  *Home Products*, 405 F. Supp. 3d at 1374-75; *see also* ECF Nos. 173, 176, 177, 181, 184, 192, Court No. 07-00123.  Because Target presents essentially the same arguments against reliquidation here that it fully presented in *Home Products*, this case should be dismissed on *res judicata* grounds.

### <u>CONCLUSION</u>

For these reasons, we respectfully request that this Court grant our motion to dismiss plaintiff's complaint with prejudice, and enter judgment for defendant.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

 /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

Of Counsel:                              /s/ Alexander Vanderweide
Edward N. Maurer                         ALEXANDER VANDERWEIDE
Deputy Assistant Chief Counsel           Senior Trial Attorney
International Trade Litigation            Department of Justice, Civil Division
U.S. Customs & Border Protection         Commercial Litigation Branch
                                         26 Federal Plaza, Room 346
                                         New York, New York 10278
                                         Tel. (212) 264-9230 or 0482
                                         Attorneys for Defendant

August 13, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, JUDGE

| | | |
|---|---|---|
| | : | |
| TARGET CORPORATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00162 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT</u>
## <u>STANDARD CHAMBER PROCEDURE 2(B)</u>

I, Alexander Vanderweide, a Trial Attorney in the Office of the Assistant Attorney

General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is

responsible for the foregoing memorandum, relying upon the word count feature of the word

processing program used to prepare the reply brief, certify that this brief complies with the type-

volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 5427 words.


<u>/s/ Alexander Vanderweide</u>