Slip Op. 23-106

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TARGET CORPORATION, | |
| Plaintiff, | Before: Leo M. Gordon, Judge |
| v. | Court No. 21-00162 |
| UNITED STATES, | |
| Defendant. | |

## <u>OPINION</u>

[Defendant's USCIT Rule 12(b)(6) motion to dismiss for failure to state a claim granted.]

Dated: July 20, 2023

<u>Patrick D. Gill</u>, Sandler, Travis & Rosenberg, P.A. of New York, N.Y., for Plaintiff Target Corporation.

<u>Alexander Vanderweide</u>, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of New York, N.Y., for Defendant United States. With him on the briefs were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General; <u>Patricia M. McCarthy</u>, Director; and <u>Justin R. Miller</u>, Attorney-in-Charge. Of counsel was <u>Edward N. Maurer</u>, Deputy Assistant Chief Counsel, International Trade Litigation, U.S. Customs & Border Protection, of New York, N.Y.

Gordon, Judge: This action involves a challenge by Plaintiff Target Corporation ("Plaintiff" or "Target") of the denial of its protest of the reliquidation by U.S. Customs and Border Protection ("Customs") of 40 entries that Customs originally liquidated at the incorrect antidumping duty rate.  See Compl., ECF No. 6; see also Court No. 07-00123, ECF No. 168 (Dec. 8, 2016) ("Judgment"); Court No. 07-00123, ECF No. 172 (Oct. 27, 2017) ("Initial Order of Reliquidation"); <u>Home Prods. Int'l, Inc. v. United States</u>, 43 CIT ___, 405 F. Supp. 3d 1368 (2019) ("<u>Home Products I</u>").  The court has jurisdiction pursuant to 28 U.S.C. § 1581(a), as compared to 28 U.S.C. § 1581(c) for Court No.

07-00123, the precursor of this action.  Before the court is Defendant's USCIT Rule

12(b)(6) motion to dismiss for failure to state a claim.  <u>See</u> Def.'s Mot. to Dismiss for

Failure to State a Claim, ECF No. 8 ("Def.'s Mot."); Pl.'s Resp. to Mot. to Dismiss, ECF

No. 10 ("Pl.'s Resp."); Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 11

("Def.'s Reply"); <u>see also</u> USCIT R. 12(b)(6).

## I. Background

This action follows Target's unsuccessful attempt to challenge the reliquidation

of the subject entries that was ordered in Court No. 07-00123.  <u>See</u> Court No. 07-00123,

Initial Order of Reliquidation; <u>Home Products I</u>.  In that matter, the court entered judgment

pursuant to a stipulation of settlement that established an antidumping duty margin

of 72.29% for the first administrative review of imports of metal-top iron tables from China

("subject merchandise") and manufactured/exported by Since Hardware

(Guangzhou) Co., Ltd. ("Since Hardware").  <u>See</u> Court No. 07-00123, Judgment, ECF

No. 168 (Dec. 8, 2016) ("Judgment").

In March 2017, several months after the entry of the Judgment, the Government

learned that Customs had erroneously liquidated 242 entries of the subject merchandise,

including Target's 40 entries, at the original cash deposit antidumping duty rate of 9.47%

instead of the 72.29% rate set forth in the Judgment.[1]  The Government then sought an

---

[1] The Judgment had ordered "that the injunction enjoining liquidation of the subject merchandise in this action, <u>see</u> <u>Home Products International, Inc. v. United States</u>, Court No. 07-00123 (CIT Apr. 18, 2007), ECF No. 11 (prelim. inj. order) shall be dissolved, and the covered entries liquidated in accordance with this entry of judgment."  Judgment. The Judgment directed that the covered entries "produced or exported by Since Hardware" were to be liquidated at a rate of 72.29 percent.  <u>Id.</u>

order directing Customs to reliquidate the 242 entries, since the 90-day window for voluntarily reliquidation by Customs under 19 U.S.C. § 1501 had expired.  See Court No. 07-00123, Status Report, ECF No. 171 (Oct. 20, 2017).  Home Products International, Inc. ("Home Products"), Plaintiff in Court No. 07-00123, joined in the Government's motion.  As an "affected domestic producer" under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), 19 U.S.C. § 1675,[2] Home Products stood to lose considerable compensation from the antidumping duties to be collected and distributed to it under the CDSOA unless the erroneous liquidations were corrected.

In the absence of any objection at the time, and consistent with its inherent power as an Article III court and the obligation to enforce its own judgments, the court entered an order directing reliquidation at the 72.29% rate reflected in the Judgment.  See Initial Order of Reliquidation; see also Def.'s Mot. at 3.  Shortly thereafter, Target became aware of the court-ordered reliquidation and contested its lawfulness.  Target then filed motions to intervene under USCIT Rule 24(a) (intervention as of right) and Rule 24(b) (permissive intervention), to reconsider, and to vacate the Initial Order of Reliquidation.  See Court No. 07-00123, ECF Nos. 173 (intervention), 176 (reconsideration), 177 (vacation).

Subsequently, the court stayed implementation of the Initial Order of Reliquidation and re-postured the post-judgment relief sought by the Government and Home Products as a supplemental proceeding to enforce the Judgment under USCIT Rule 71.  See Court No. 07-00123, Order Issuing Stay Pending Disposition of Target's Motions, ECF No. 188

---

[2] Also known as the Byrd Amendment, the CDSOA was enacted in October 2000 and repealed in February 2006.

(Dec. 22, 2017).  In disposing of Target's multiple requests for relief, this Court addressed the unusual circumstances before it by providing a comprehensive overview of the matter's procedural posture, the erroneous liquidations by Customs, the powers of the U.S. Court of International Trade, how the finality of liquidation operates in traditional customs duty cases, and how finality operates in the international trade context (i.e., antidumping and countervailing duties), focusing on the court's power and authority to correct liquidations not in accordance with a court order or judgment.  See generally Home Products I.

        The following provides context for understanding the unique facts that gave rise to this action.  Though it was a purchaser/importer of the subject merchandise from Since Hardware, Target chose not to participate in the underlying administrative review and subsequent § 1581(c) litigation, Court No.07-00123.  As Target was not a party to the administrative proceeding below, it had not perfected a right to intervene in Court No. 07-00123.  Target, therefore, could not challenge the merits of the litigation that led to the Judgment.  See 28 U.S.C. § 2631(j)(1)(B) ("in a civil action under section 516A of the Tariff Act of 1930, only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right"); USCIT Rule 24(a)(1).  Additionally, while USCIT Rule 24(b)(1) provides for permissive intervention by any person who is "given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact," that form of intervention is not available in § 1581(c) litigation.  See, e.g., Ontario Forest Indus. Assoc. v. United States, 30 CIT 1117, 1130

n.12, 444 F. Supp. 2d 1309, 1322 n.12 (2006) ("The court notes that here jurisdiction is founded under 28 U.S.C. § 1581(i).  Section 2631(j) of Title 28 allows permissive intervention in such suits.  In contrast, under 28 U.S.C. § 1581(c), intervention may only be sought as a matter of right. See 28 U.S.C. § 2631(j)(B)."); see also Dofasco Inc. v. United States, 31 CIT 1592, 1594–95, 519 F. Supp. 2d 1284, 1286–87 (2007) (collecting cases explaining unavailability of permissive intervention under 28 U.S.C. § 1581(c)).

Whether Target could have earlier sought interested party status and participated throughout the lengthy and expensive administrative process before the U.S. Department of Commerce ("Commerce") is a moot point.  Cf. U.S. Magnesium LLC v. United States, 31 CIT 792, 793 (2007) ("While it may be true that TMI could have sought intervention of right earlier in this matter or initiated its own action to contest the Final Results, given the statutory scheme and this Court's rules and jurisprudence, the court cannot now see how TMI may, pursuant to USCIT Rule 24(b), permissively intervene in this matter." (internal citations omitted)).  In the final analysis, Target, as the importer of 40 of the entries of the subject merchandise, was fundamentally and fully protected by the advocacy of its supplier—the foreign manufacturer/exporter, Since Hardware— throughout the administrative process as well as in the follow-on litigation, Court No. 07-00123.

Regarding Target's post-judgment attempt to intervene in Court No. 07-00123, the court explained that USCIT Rule 24 and 28 U.S.C. § 2631(j) were inapplicable in these circumstances because these provisions appertain to intervention by a litigant who was a party to the administrative proceeding below, which Target was not.  Again,

as Target's rights were fully protected by the foreign manufacturer/exporter in the matter before Commerce and the court, Target had no reason or incentive to intervene in the case-in-chief in Court No. 07-00123.[3]  Target's "rights" arose only upon the issuance of the Initial Order of Reliquidation.

As neither Target nor Customs were parties to Court No. 07-00123, and due to the potential impact on Target's entries of the post-judgment relief sought by the Government and Home Products, the court addressed Target's opposition to the Initial Order of Reliquidation and its various motions through the vehicle of USCIT Rule 71. See USCIT R. 71 ("When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."). The objections raised by Target were thus considered in the context of that separate, supplemental, post-judgment proceeding—a proceeding that was grounded in equity, specifically focused on the power and authority of the U.S. Court of International Trade to enforce its own judgment.

In considering Target's objections, the court balanced the various factors involved, including the timeline relating to the discovery in August 2017 of the erroneous liquidations that occurred in March 2017, and the relative alacrity with which the Government and Home Products sought reliquidation once they discovered the problem.  Home Products I, 43 CIT at ___, 405 F. Supp. 3d at 1375–77; cf. Cemex,

---

[3] As the U.S. Court of Appeals for the Federal Circuit ("CAFC" or "Court of Appeals") observed, the net effect of granting Target relief would be to preserve a "windfall from Customs' failure to properly implement a court order."  Home Products Int'l, Inc. v. United States, 846 F. App'x 890, 895 n.1 (Fed. Cir. 2021) ("Home Products II").

S.A. v. United States, 384 F.3d 1314, 1325 (Fed. Cir. 2004) ("Cemex") ("Ad Hoc should

have moved the Court of International Trade to enforce the judgment in 1998, rather than

in 2003").  As a result, the court determined that it had the authority to order reliquidation

and issued an affirmative injunction ("Final Order of Reliquidation") that, inter alia, vacated

and superseded the Initial Order of Reliquidation.  Home Products I, 43 CIT at ___, 405 F.

Supp. 3d at 1378.  It also directed Customs to promptly reliquidate the subject entries in

conformity with the Judgment, and denied as moot Target's motions to intervene and to

stay implementation of, and to reconsider and vacate, the Initial Order of Reliquidation.

Id.

Target then appealed Home Products I.  See Court No. 07-00123, Docketing of

CAFC Appeal No. 2020-1202, ECF No. 206 ("Appeal").  In the period between the

issuance of Home Products I and the filing of the Appeal, Customs reliquidated all

242 entries, including Target's 40 entries, consistent with this Court's December 8, 2016

Judgment.  See Def.'s Mot at 5.  Target paid the reliquidated amounts and filed Protest

No. 1401-20-102470 ("Protest") against the reliquidations.  See Compl. ¶¶ 1, 7.  In view

of the Appeal, Customs suspended consideration of the Protest.  See id. ¶ 26.

On appeal, both Target and the Government agreed that Target had not satisfied

the requirements for intervention as of right pursuant to 28 U.S.C. § 2631(j)(1)(B).

However, they urged the Court of Appeals to consider that Target should fall into

the "unique interest" exception to the rule against non-party appeals, so the court could

reach Target's arguments regarding the Final Order of Reliquidation.  See Home

Products II, 846 F. App'x at 893–94.  The Court of Appeals did not agree.  Id. at 894.

After examining the various formulations of the unique interest exception, the Court of Appeals applied the following test: (1) whether the non-party participated in the proceedings below; (2) whether the non-party has a personal stake in the outcome; (3) whether the equities favor hearing the appeal; and (4) whether the non-party has an alternative path to appellate review of the decision.  Id.  The court found that Target satisfied the first two factors but not the last two:

> Target's nonparty appeal is in tension with the ordinary process of intervention. . . . Target effectively asks that we ignore that it sought intervention and skip directly to considering this case as a nonparty appeal.  We decline to do so.  To ensure that the exceptions to the rule against nonparty appeals remain narrow, we conclude that equity required Target, whose motion to intervene was denied, to appeal and contest the denial of intervention.  As Target failed to follow that procedure and does not meaningfully defend that choice, we conclude that the equities do not favor allowing Target's nonparty appeal.[ ]

> Finally, it is undisputed that Target has another, statutorily prescribed, path to redress its grievance without resort to a nonparty appeal.  Target has, in fact, followed that path.  Upon reliquidation of the subject entries, Target protested Customs' actions pursuant to 19 U.S.C. § 1514.  Target's Opening Br. 20.  If Customs denies Target's protest, Target will be able to commence an action in the CIT challenging that decision.  See 28 U.S.C. §§ 1581(a), 2637(a).  And, if the CIT resolves that case adversely to Target, Target, as a party to the CIT action, will be able to seek review in this court.  See 28 U.S.C. § 1295(a)(5).

> Target contends that requiring it to continue down that path will be a waste of resources, given the amount of time the proceeding will take and the fact that it "is inevitable a new case will land right back with this Court."  Target's Suppl. Br. 8.  While we recognize some inefficiency in that process, it is a problem of Target's own creation.  Target, although a nonparty, chose to involve itself at the tail-end of this CIT proceeding.  Its involvement resulted in an additional

> two years of litigation before the CIT and over a year pending appeal in this court.  Had Target chosen to follow the procedure prescribed by statute, such that reliquidation would have occurred in November 2017, Target may well have reached the point of appeal in its own case.  Target's choice to risk a dead-end road, rather than follow the clear path laid out by statute, does not create an exceptional circumstance warranting nonparty appeal.

Id. at 895 (footnote omitted, emphasis added).  As a consequence, the Court of Appeals dismissed Target's appeal in its entirety, thereby concluding the Home Products litigation. Customs then proceeded to consider, and ultimately deny, Target's protest.  Compl. ¶ 27; Protest.  Target then commenced this action seeking judicial review of the denial of its protest.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim is appropriate when a plaintiff's allegations do not entitle it to a remedy.  See United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327 (Fed. Cir. 2006) (citation omitted).  The motion "tests the legal sufficiency of a complaint," Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002), which must be dismissed if it fails to present a legally cognizable right of action. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff's factual allegations must be "enough to raise a right to relief above a speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id.  Dismissal is required when a complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "In deciding a motion to dismiss, the court must accept well-pleaded factual allegations as true and must draw

all reasonable inferences in favor of the claimant," <u>Kellogg Brown & Root Servs., Inc. v. United States</u>, 728 F.3d 1348, 1365 (Fed. Cir. 2013), but it need not accept legal conclusions contained in the same allegations.  <u>Twombly</u>, 550 U.S. at 555.

### III. Discussion

### A. Dispositional Path

As an initial matter, the court addresses the issue of the proper procedural vehicle for disposing of this action.  Defendant argues that Target's claims reappear under the jurisdictional guise of 28 U.S.C. § 1581(a) without altering any of Target's arguments raised in the supplemental post-judgment proceeding in Court No. 07-00123.  Def.'s Mot. at 1.  Defendant further contends that Plaintiff's complaint "consists of legal arguments, all of which have been considered and rejected by the [c]ourt in <u>Home Products[ I]</u>." <u>Id.</u> Therefore, in Defendant's view, "Target's complaint should be dismissed for failure to state a claim upon which relief can be granted."  <u>Id.</u>  Target disagrees, contending that it is entitled to relief, and that the merits can be resolved by treating Defendant's Rule 12(b)(6) motion as a motion for summary judgment or a motion for judgment on the pleadings.  <u>See</u> Pl.'s Resp. at 2 n.1 ("While a motion for judgment on the pleadings or a motion for summary judgment should be filed after answer, an answer to the factual allegations of the complaint in this case would be unnecessary. … [Plaintiff] submit[s] that the Court should treat the instant motion as a motion for judgment on the pleadings or for summary judgment, proceed to decide the case on the merits, and waive the defects in the filing of the dispositive motion <u>nunc pro tunc</u>.  Under Rule 1 of the Rules of the Court, the 'rules should be construed, administered and employed by the court and the parties

to secure the just, speedy and inexpensive determination of every action and proceeding.'").  Target also maintains that filing of an answer is unnecessary because Defendant's motion does not contest the factual allegations of the complaint.  Id.

For the court to convert a motion to dismiss for failure to state a claim into a summary judgment motion, certain circumstances must exist—namely whether a party presented matters outside the pleading that were not excluded by the court. USCIT R. 12(b)(6); see also Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed. 2023).  When those circumstances are present, the court is to convert the Rule 12(b)(6) motion to a motion for summary judgment.  Id.  As neither party refers to matters outside of the complaint, those circumstances are not present.  Similarly, the pleadings are not closed as Defendant has yet to file an answer.  Accordingly, circumstances are not present that call for the conversion of Defendant's motion to a motion for judgment on the pleadings.  USCIT R. 12(c); 5C Fed. Prac. & Proc. Civ. § 1366.

As the parties acknowledge, this action presents a unique set of facts and circumstances.  The parties further agree that the complaint presents no dispute about the material facts of this action, but merely a pure question of law, i.e., the legal conclusions to be drawn from the governing legal authorities.  These questions of law— the authority of the Court of International Trade to order reliquidation considered in conjunction with certain statutory provisions, including 19 U.S.C. § 1501 (reliquidation), as well as finality and the applicability of Cemex—are resolvable under Rule 12(b)(6). See Yanko v. United States, 869 F.3d 1328, 1331 (Fed. Cir. 2017) (treating as "pure legal issue of statutory interpretation" claim based on interpretation of statutory provision and

related executive order).  Thus, "the sufficiency of the complaint is the question on the merits, and there is no real distinction in this context between the question presented on a 12(b)(6) motion and a motion for summary judgment."  <u>Marshall Cty. Health Care Auth. v. Shalala</u>, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  Accordingly, the court agrees with Defendant that Rule 12(b)(6) is the proper procedural vehicle for resolving this action.

### B. Merits Analysis

Target claims the Final Order of Reliquidation is <u>ultra vires</u>, illegal, null and void, as well as contrary to the guidance of the Court of Appeals in <u>Cemex</u>.  Compl. ¶¶ 29, 30.  It argues that the Court of International Trade "cannot use its equitable powers to ignore a statutory prohibition" or "ignore the binding precedent of the CAFC in <u>Cemex</u>."  <u>Id.</u> ¶¶ 37, 38.  Target maintains that "[a]s in this action, there was no question in <u>Cemex</u> that the entries were deemed liquidated improperly under 19 U.S.C. § 1504(d), and there was no reliquidation of the deemed liquidation within the 90-day period permitted under 19 U.S.C. § 1501."  <u>Id.</u> ¶ 35.  "In <u>Cemex</u>, the CAFC unanimously affirmed the decision of this [c]ourt denying the domestic producers' motion to reliquidate and holding that the liquidation became 'final and conclusive upon all persons' under 19 U.S.C. § 1514.  384 F.3d at 1315–316."  <u>Id.</u> ¶ 36.

Target argues that <u>Cemex</u> controls the result here, going so far as to declare that "<u>Cemex</u> is on all fours with this case."  Pl.'s Resp. at 16.  Target's argument is unavailing as the court has already made clear its view of <u>Cemex</u> regarding the facts that gave rise to the supplemental post-judgment proceedings in Court No. 07-00123, and why <u>Cemex</u> was distinguishable in that context.  <u>See</u> <u>Home Products I</u>, 43 CIT at ___, 405 F. Supp. 3d

at 1376–77.  Beyond this general reliance on Cemex, Target appears to acknowledge that its arguments here amount to little more than the "unenviable task of requesting a judge to reverse his own decision."  Pl.'s Resp. at 2.  For the reasons set forth in Home Products I as well as this opinion, the court remains unpersuaded by Target's arguments.

As the court previously observed, when considering "what most likely tips the balance in one direction or the other is how quickly the party with an interest in a judgment moved to assert their rights once they knew or should have known about the error."  Home Products I, 43 CIT at ___, 405 F. Supp. 3d at 1374.  The belated actions of the domestic industry in Cemex are simply not comparable to those of the domestic industry plaintiff in Home Products I.  In Cemex, Customs did not liquidate pursuant to Commerce's instructions, which were issued in March 1998.  Those instructions were premature, and issued prior to the expiration of the 90-day certiorari period for appeal to the U.S. Supreme Court, which had the effect of lifting the court-ordered suspension of liquidation.  But that was immaterial, as the entries were "deemed liquidated" in September 1998, a discovery the domestic industry did not pursue or learn of until 2002, some four years later.  Critically, unlike the circumstances here, Cemex did not involve a violation of an affirmative injunction or a judgment.  There was "merely" a failure by Customs to follow instructions from Commerce that went undiscovered for years, rather than the passage of a few months addressed by the supplemental post-judgment proceedings in Court No. 07-00123.

The court notes that Target often refers to the erroneous liquidations at issue here as "deemed" liquidations under 19 U.S.C. § 1504(d).  However, Home Products I only

involved <u>actual</u> liquidations, not <u>deemed</u> liquidations as in <u>Cemex</u>.  <u>See</u> Court No. 07-00123, Status Report, ECF No. 171 (explaining that "Customs recently realized that … it misapplied the liquidation instructions. … [Specifically, Customs had liquidated several entries in violation of this Court's judgment], at the lower cash deposit rate," and further noting that "[u]nsurprisingly, no importers have filed protests against the erroneous liquidations at a lower rate").    Therefore, Plaintiff's arguments regarding deemed liquidations under § 1504(d) are without merit.

        In the end, Plaintiff's reliance on <u>Cemex</u> is simply misplaced.  Reading <u>Cemex</u> as broadly as Plaintiff suggests would elevate the principle of finality found in § 1514 over the inherent power of the Court of International Trade under Article III of the United States Constitution.   To do so would render this Court powerless to enforce its orders and judgments.  <u>Home Products I</u>, 43 CIT at ___, 403 F. Supp. 3d at 1377; <u>see also</u> <u>Allegheny Bradford Corp. v. United States</u>, 28 CIT 603, 608 n.4, 342 F. Supp. 2d 1162, 1166 n.4 (2004) ("Section 1514(b), in relevant part, prevents certain determinations of Customs from becoming final when an action is commenced with this Court. Section 1514(b) was enacted in 1979, before the Court had power to enjoin liquidation pursuant to § 1516a(c). Because the injunction power allows the Court to protect an importer from liquidations that might otherwise become final and unreviewable, '§ 1514(b) seems somewhat redundant.'  The court finds it unreasonable to construe § 1514(b)–a statutory provision with an ambiguous purpose–to preclude review of the improper liquidations and thereby frustrate the intent of an injunction order granted pursuant to § 1516a(c), a provision with

the clear purpose of providing temporary protection to parties who contest agency determinations." (internal citations omitted)).

Target also contends that 19 U.S.C. § 1501,[4] the 90-day voluntary reliquidation provision, "foreclosed" reliquidation by order of the court. The court again disagrees. That provision merely limits the time within which Customs may act to voluntarily correct its own mistake. Plaintiff points to no language in the statute or its legislative history to support its argument. The statute on its face does not govern the authority of the Court of International Trade to grant relief from an unlawful liquidation derived from its jurisdiction over the entries underlying an action, as well as its inherent powers as an Article III court. See Home Products I, 43 CIT at ___, 405 F. Supp. 3d 1373–74, 1376-77; see also 28 U.S.C. § 1585; 28 U.S.C. § 2643; Allegheny Bradford Corp., 28 CIT at 614-15, 342 F. Supp. 2d at 1171 ("To remedy liquidations that violate a valid court order, the Court 'possesses all the powers in law and equity of, or as conferred by statute upon, a district court of the United States.' This includes the power to grant 'any other form of relief that is appropriate in a civil action.'" (internal citations omitted)); AK Steel Corp v. United States, 27 CIT 1382, 1388, 281 F. Supp. 2d 1318, 1323 (2003) ("Where liquidation occurs through an illegal act of Customs and in the absence of a protestable event, the doctrine of finality cannot be said to attach. To reach any other result would be absurd.").

---

[4] "A liquidation made in accordance with section 1500 or 1504 of this title or any reliquidation thereof made in accordance with this section may be reliquidated in any respect by U.S. Customs and Border Protection, notwithstanding the filing of a protest, within ninety days from the date of the original liquidation." 19 U.S.C. § 1501.

As the court stated in Home Products I, it was facing "a simple and straightforward issue … whether to enforce its judgment through an affirmative injunction, which the court decides by balancing the proper assessment of antidumping duties with the finality of liquidation." Home Products I, 43 CIT at ___, 403 F. Supp. 3d at 1373 (citing SSAB v. United States, 32 CIT 795, 803, 571 F. Supp. 2d 1347, 1354 (2008)).  Given the facts, the court concluded that "justice require[d] correction of the erroneously liquidated subject entries." Id., 43 CIT at ___, 403 F. Supp. 3d at 1378.  Once again, the court reaches the same conclusion. It is a matter of basic logic and common sense that Court of International Trade (and the Court of Appeals), not Customs, has the "final" say about entries in a trade action.  See 19 U.S.C. § 1516a(e); Home Products I, 43 CIT at ___, 403 F. Supp. 3d at 1373 ("When Customs liquidates an entry, the finality considerations of § 1514 always lurk in the background except when the Court of International Trade takes jurisdiction over the entries in an action under § 1516a.  See 19 U.S.C. § 1514(b). This is a logical and necessary carve-out from § 1514 because such entries need to be liquidated in accordance with 'the final court decision' pursuant to § 1516a(e), meaning the court, not Customs, necessarily has the final say over the entries.").

Target also relies on certain language from the dissent in In re Section 301 Cases, 45 CIT ___, ___, 524 F. Supp. 3d 1355, 1374 (2021) for support.  See Pl.'s Resp. at 19, 21.  To the extent Target attempts to use that discussion as another attack on the court's prior decision in Court No. 07-00123, the discussion taken as a whole does not undermine, but rather supports, the analysis set forth in Home Products I.  It is consistent with this Court's view of its duty and statutory authority when confronting enforcement of

its own judgments.  See In re Section 301 Cases, 45 CIT at ___, 524 F. Supp. 3d at 1382 ("In light of the CIT's broad remedial authority, the court asked the Parties to identify any cases in which 'the Federal Circuit found that the CIT erred in its exercise of discretion as to appropriate relief.'  . . .  None of the identified cases suggest that the court would overstep its authority to order reliquidation to prevailing Plaintiffs in this case.").

The statutory scheme states plainly and unequivocally that this Court has all powers in law and equity that are conferred on all Article III courts under the Constitution. See 28 U.S.C. § 1585; 28 U.S.C. § 2643.  Were Target to prevail—namely, have this Court hold that it lacks the power to enforce its own judgment—such a conclusion would turn the clock back over 40 years to before the passage of the Customs Courts Act of 1980, and again call into question whether a party before the Court could obtain full and complete relief.  See H.R. Rep. No. 96-1235, at 19–20 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3730–31 (explaining one purpose of Customs Courts Act of 1980 as providing U.S. Court of International Trade with "all the necessary remedial powers in law and equity possessed by other federal courts established under Article III of the Constitution." (emphasis added)).  This the court cannot and will not do.

Court No. 21-00162                                                          Page 18

## IV. Conclusion

For the foregoing reasons, the court will grant Defendant's Rule 12(b)(6) motion to

dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.

                                                    /s/ Leo M. Gordon
                                                   Judge Leo M. Gordon

Dated: July 20, 2023
     New York, New York